Rockingham
No. 7392

BENJAMIN T. BARTLETT, SR., & *a.*

v.

BENJAMIN T. BARTLETT, JR., & *a.*

April 30, 1976

*George H. Grinnell* and *Stanton E. Tefft (Mr. Tefft* orally) for the plaintiffs.

*George J. Basbanes* and *Madeline M. Neilon* [of Massachusetts] *(Madeline M. Neilon* orally) for the defendants.

DUNCAN, J. This is a petition for partition of real estate in Derry brought by the plaintiff and his wife against their son and his wife. The defendants by their answer sought a decree that the property belonged to them free and clear of claims of the plaintiffs. A commissioner was appointed by the Court *(King,* J.) and the proceeds of sale of the premises, amounting to slightly over $22,400 exclusive of interest, were deposited with the clerk of court. Following hearing before *Cann,* J., a final decree was entered awarding $20,000 of the proceeds to the plaintiffs and the balance to the defendants. Thereafter the defendants' motion for a "new hearing" was denied, subject to exception. All questions of law raised by the defendants' exceptions were reserved and transferred by *Cann,* J.

The record indicates that the nature of the title of the respective parties is complicated by action taken or omitted in a prior proceeding between the same parties in which the plaintiffs sought to have the premises conveyed to them for such consideration as the court should determine, or to have their interest therein otherwise determined.

The litigation arises out of the following facts. The plaintiff Benjamin, Sr., agreed in 1968 to purchase from his brother a single house in Derry which Benjamin, Sr., and his wife then occupied. The defendant Benjamin, Jr., was then on leave from the Navy, and application for a loan was made in his name to take advantage of favorable terms available under the GI bill of rights. Title was conveyed to Benjamin, Jr., who signed the note and mortgage.

Thereafter Benjamin, Sr., made all payments on account of the loan and taxes, until sometime in 1974. Additional home improvement loans were made in the interim, which the plaintiff Benjamin, Sr., also paid, and the premises were converted from a single house to three apartments and a store, resulting in expen-

ditures in excess of carrying charges, by the plaintiffs Benjamin of over $20,000, which sum the trial court found "represented the parent's life savings".

In the original proceeding brought by the plaintiffs in 1972, a stipulation was filed by the parties and made the basis of a decree under date of July 24, 1973, by which the defendants were ordered to "convey to the Plaintiffs and to the survivor of them a life estate in the property", subject to the right of the defendants "to live in the property and/or operate a small business" in part of the property "appropriate for their needs paying only utilities therefor". No conveyance was ever made by the defendants pursuant to this decree, but they moved into the premises, and according to the allegations of the petition for partition subsequently filed, proceeded to oust the plaintiffs from the premises.

In June 1974, the defendants moved to vacate the decree of July 24, 1973, upon the ground that it had created "an unworkable and hostile situation". So far as appears the motion was never acted upon.

In September 1974, the plaintiffs sought in this petition for partition, then pending, to have a commissioner appointed and the defendants ordered to vacate the premises. By order of *King*, J., on September 18, 1974, the defendants were defaulted and partition was granted, and an order for sale entered. On October 23, 1974, the defendants' motion to set aside the order of September 18, 1974, was "granted insofar as setting default aside" by *King*, J. The property was sold on April 24, 1975, and the proceeds of the sale and insurance proceeds resulting from a fire were deposited with the clerk, as previously stated.

The nature of the interest of the plaintiffs in the property which is the subject matter of the litigation must be viewed as equitable rather than legal, whether it is considered to have arisen out of the conduct of the parties between 1968 and 1973, or out of the decree of July 24, 1973, which was never complied with by the defendants, and which they sought to have vacated by motion never brought on for hearing.

No issue is presented concerning the jurisdiction of the court to order partition. If, as defendants now contend, the title of the plaintiffs, in equity, was that of life tenants by reason of the stipulation of the parties forming the basis of the 1973 decree, then both plaintiffs and defendants were entitled to possession of portions of the property, and partition was properly granted. *Putnam v. Davis,* 103 N.H. 121, 166 A.2d 469 (1960); *see Wallace v. Stearns,*

96 N.H. 367, 77 A.2d 109 (1950).

The issues now presented relate to the trial court's order of distribution of the proceeds from the property. The defendants maintain that the court erred in considering the plaintiffs' expenditures on the property, and argue in this court that the plaintiffs are entitled at most to the "actuarial value" of their life estates. It appears however that this contention was never presented to the trial court, and consequently is not presented by any exception before us. The only remaining issue is whether the court erred in ordering the payment of $20,000 to the plaintiffs to reimburse them for expenditures made for permanent improvements to the property standing in the defendants' names, in order to prevent unjust enrichment. *Abbott v. Abbott,* 78 N.H. 134, 97 A. 976 (1916).

The defendants argue that the plaintiffs are barred by res adjudicata arising from the July 24, 1973 order of the court approving the stipulation of the parties in the previous suit, which made no provision for allowance to the plaintiffs for expenditures made. That action, however never went to judgment, and the agreed stipulation and the order of the court, were never complied with by the defendants who moved to vacate the decree. In these circumstances, equitable considerations may properly enter into the question of enforcement of their executory agreement. *Ducey v. Corey,* 116 N.H. 163, 355 A.2d 426 (1976); *Burtman v. Butman,* 94 N.H. 412, 54 A.2d 367 (1947).

Partition is equitable in nature, and the jurisdiction of the court extends to adjustment of conflicting claims in a fair division of the proceeds in the light of the attendant circumstances. *Barney v. Leeds,* 54 N.H. 128 (1874); *Warner v. Eaton,* 78 N.H. 515, 102 A. 535 (1917); *see* 2 American Law of Property §§ 6.21, 6.26 (A. Casner ed. 1952); 4 J. Pomeroy, Equity Jurisprudence § 1387 (5th ed. 1941). The remedy at law afforded by RSA ch. 538 is cumulative and not exclusive of general equitable jurisdiction of the court. *Hale v. Jacques,* 69 N.H. 411, 43 A.121 (1898). Equity does not require that the proceeds in partition always be divided strictly according to the relative value of the estates held by the respective parties. *Leavitt v. Locke,* 68 N.H. 17, 40 A. 395 (1894); *see Abbott v. Abbott;* 78 N.H. 134, 97 A. 976 (1916).

The Wisconsin Supreme Court, in discussing the partition of land held in joint tenancy, explained the rationale thus:

"[T]he interests of joint tenants being equal during their lives, a presumption arises that upon dissolution of the

joint tenancy during the lives of the cotenants, each is entitled to an equal share of the proceeds. This presumption is subject to rebuttal, however, and does not prevent proof from being introduced that the respective holdings and interests of the parties are unequal. The presumption may be rebutted by evidence showing the source of the actual cash outlay at the time of the acquisition ... unequal contribution by way of money or services, unequal expenditures in improving the property or freeing it from incumbrances and clouds, or other evidence raising inferences contrary to the idea of equal interest in the joint estate." *Jezo v. Jezo*, 23 Wis. 2d 399, 406, 127 N.W.2d 246, 250 (1964).

There is no logical reason why this rationale should not apply to partition between life tenants and remaindermen. Equity will look behind the legal estates of the parties and inquire as to their real interests in the property. Although the plaintiffs knew that the defendants would hold the reversion, the defendants will nevertheless be unjustly enriched if permitted to retain the proceeds which result from the improvements. Despite the fact that the plaintiffs signed an agreement to take life estates they will be denied the benefit of property and improvements financed entirely out of their pockets if the award is set aside. *See Leavitt v. Locke*, 68 N.H. 17, 40 A. 395 (1894) wherein the court instructed the committee to consider the defendant's claim for improvements made while he was in possession and which he knew inured to the benefit of the entire estate. *See also Warner v. Eaton*, 78 N.H. 515, 102 A. 535 (1917).

The sum awarded to the plaintiffs was for expenses incurred in improving the property and amortizing loans. There is ample authority permitting such recovery. 2 American Law of Property, *supra* § 6.18, at 83; Restatement of Property § 127 (1936) and amended Comment *a*, 1948 Supp. (1949); *Warner v. Eaton supra* (allowance for improvements); *Hermance v. Weisner*, 228 Wis. 501, 279 N.W. 608 (1938) (allowance for sums expended in discharge of a mortgage).

*Defendants' exceptions overruled.*

All concurred.