492 A.2d 1349

Richard J. CAROZZA

v.

Barbara Jeane MURRAY.

No. 1210, Sept. Term, 1984.

Court of Special Appeals of Maryland.

June 6, 1985.

Michael P. Darrow, Annapolis (M. Evelyn Spurgin and Hillman, Brown & Darrow, Annapolis, on brief), for appellant.

William A. Hahn, Jr., Baltimore, for appellee.

Argued before MOYLAN, ALPERT and ROBERT M. BELL, JJ.

ROBERT M. BELL, Judge.

Richard J. Carozza and Barbara Jeane Murray, though unmarried to each other, lived together from 1973 through 1982. After their separation, Murray filed an action in the Circuit Court for Anne Arundel County to sell, in lieu of partition, certain property purchased and titled in joint names while they lived together. The sale was ordered and Carozza subsequently moved for a determination of the appropriate division of the proceeds. Following a hearing on his motion, the trial court issued an order determining that Carozza and Murray were entitled to equal interests in the property. This appeal, questioning only the correctness of the trial court's order, then followed. We find that the trial court was not clearly erroneous and, therefore, we affirm.

When the parties met, Carozza was the owner of property, the Maple Drive property, which he had purchased some five years earlier. While the parties lived together, three additional, separate parcels of real estate were purchased and title taken as joint tenants: the Southwestern Boulevard property and the Oregon Avenue property, both purchased in 1975, and the Race Road property, the subject

property, purchased in 1980. Maple Road was sold first, and a profit of $41,000.00 realized, $20,000.00 of which were used to pay off the mortgage on Southwestern Boulevard. Thereafter, Southwestern Boulevard and Oregon Avenue were sold. Total proceeds from the three properties were $127,000.00, of which $125,000.00 were used as downpayment on Race Road. With this background, we proceed to review the findings of the trial court.

The testimony of Carozza and Murray sharply conflicted. The trial court found that Carozza, self-employed in a body and fender repair business, and Murray, primarily a legal secretary who took other jobs from time to time, entered into a business relationship in addition to a personal one. Murray was responsible for keeping house for Carozza and for her children.[1] In addition, Murray managed the Maple Drive property, paying the taxes, ground rent, collecting the rent, and depositing the rent.

Murray assisted in locating Southwestern Boulevard for Carozza's body and fender business and handled some of the necessary business communications. She helped set up the business at that location and worked in the shop from time to time. Prior to its purchase, Murray was co-lessee with Carozza on the Southwestern Boulevard property.

The body and fender repair business was operated under the trade name, "Carmur", "Car" being derived from Carozza and "mur", being a part of Murray. Both Carozza and Murray were liable on the mortgages on Southwestern Boulevard and Oregon Avenue, and later they undertook joint responsibility for the mortgages on the Race Road property.[2]

---

**1.** In 1973, when the parties met, Murray was married and had two children as a result of that marriage. She was subsequently divorced.

**2.** There were two mortgages, one held by Carozza's mother, encumbering Race Road and both parties were equally liable on those mortgages.

Murray and Carozza pooled their resources. They maintained a joint checking account, into which Murray placed her income from her jobs, benefits received from Workmen's Compensation, and child support payments, and in which Carozza placed his earnings from the business.

The court found a disparity, which it characterized as "not too great," in the parties' "incomes". Carozza's annual income during the period was approximately $20,000.00 and Murray's about $14,000.00. The court further found both that Murray made non-monetary contributions to the relationship, and that their extent Carozza minimized and Murray overstated. Other than the joint property that was sold to purchase Race Road, Murray's only monetary contribution to Race Road was $2200.00, which she received from Workmen's Compensation. The idea of a joint tenancy came from Carozza's lawyer.

Having found the facts, the trial court observed that when a joint tenancy exists, there is a presumption that the joint tenants are entitled to equal shares. Recognizing that the presumption can be overcome under certain facts circumstances, it pointed out some factors which must be considered: "the source of the cash or the outlay for the property? Were there unequal contributions of money or services? Was there an unequal encumbrances [sic] placed upon the property? Or evidence that the intent was not to make it a joint tenancy?" Having considered these factors, the court concluded:

> Looking at their relationship, their contributions, the way it was set up, the pattern of transactions, that is, there was [sic] three properties purchased, I really don't think that a case has been made to rebut the presumption. I don't find it has to be clear and convincing evidence. I, I think that's a misreading. It looks to me like it's just a preponderance, a fair preponderance of the evidence. . . .
>
> But even using a simple preponderance of the evidence I don't think enough is there. It looks like a fair share,

each contributing and when it's all over with because the property has to be sold and divided and one would like to keep it, it may cost some more to keep it. That I can't help. The parties developed this relationship themselves. They had benefit of counsel who was Mr. Carozza's counsel who prepared these documents, at least some of them. . . .

So I find that their interest in the property is fifty-fifty.[3]

Carozza concedes that it is presumed that each joint tenant owns an equal share in joint tenancy property. *Kinkenon v. Hue,* 207 Neb. 698, 301 N.W.2d 77 (1981); *Jezo v. Jezo,* 23 Wis.2d 399, 127 N.W.2d 246 (1964); *Paluszek v. Wohlrab,* 1 Ill.2d 363, 115 N.E.2d 764 (1953); *Johnson v. Johnson,* 259 Ala. 550, 67 So.2d 841 (1953). Relying upon the fact that the presumption may be rebutted and contending that the evidence is unrefuted that he contributed one-third of the purchase price for Race Road, which the court acknowledged, Carozza argues that the trial court was clearly erroneous in awarding equal shares to the parties.

The presumption of equal ownership may be rebutted, *Mueller v. Fidelity-Baltimore National Bank,* 226 Md. 629, 174 A.2d 789 (1961), *Jezo v. Jezo, supra, Johnson v. Johnson, supra,* and evidence raising inferences contrary to the idea of equal interest in a joint estate should be considered in determining whether the presumption has

---

**3.** The trial court considered each of the factors separately. It found that: The parties were equally liable on the mortgages on the property; the contributions in money and services were "not really a great inequality"; and Carozza's contribution of $41,000.00, in light of the fact that two-thirds of the money for the purchase of the subject property came from joint properties, was not a disproportionate outlay. No express finding was made as to the intent of the parties, however, it is implicit in the court's comments with respect to the role played by counsel that the court found an intention to create a joint tenancy.

been overcome. *Bartlett v. Bartlett,* 116 N.H. 269, 357 A.2d 460 (1976). That evidence, as the trial court explained, may include evidence of actual cash outlay, unequal contributions in money or services or both, and unequal expenditures in removing encumbrances from the property. *Id., Jezo v. Jezo, supra.* The burden of proof is by a preponderance of the evidence and that burden is on the party opposing the presumption. *Jezo v. Jezo, supra.* The issue with which we are presented, however, is whether the trial court was clearly erroneous in its conclusion that Carozza did not meet his burden to produce sufficient evidence to overcome the presumption. Md.Rule 1086, *Colburn v. Colburn,* 15 Md.App. 503, 292 A.2d 121 (1972).

Carozza focuses his attention on the $41,000.00 realized from the sale of Maple Drive. He urges that because these funds can be directly traced to him,[4] even though two-thirds of the purchase price for Race Road came from the proceeds of joint property, the presumption of equal ownership was overcome, the actual cash outlay contributed by him being in excess of that contributed by Murray. He argues that that court abused its discretion by not giving him credit for the $41,000.00, or explaining why he was not entitled to such credit.

---

4. Unlike appellant, we do not view *Grant v. Zich,* 300 Md. 256, 477 A.2d 1163 (1984) as a useful guide in this case. The only similarity between Grant and the instant case is the way in which the subject property was acquired and titled. Grant involved Maryland's Property Disposition in Divorce and Annulment Act, Md.Code Ann., Courts Article, §§ 3–6A–01, et seq., whose broad remedial purpose is "to adjust the property interests of spouses fairly and equitably". The source of funds theory, as explicated in Grant, related only to the determination whether property was "marital" or "non-marital", for purposes of determining whether a "marital award" shall be made, a determination important to insure that the parties to a marriage receive a fair and equitable return on their contribution, monetary and non-monetary, to the marriage. The source of funds approach does not, and under Grant's analysis, could not, affect the parties' interests in property, as disclosed by the title to that property. In short, the source of funds analysis does not obtain at partition sales. See *Grant,* 300 Md.App. at p. 271, n. 4, 477 A.2d 1163.

■  It appears that Carozza may be arguing that unequal contributions by the parties to the purchase price results in the failure of the unity of interest necessary to a joint tenancy.  A similar argument was made in *Paluszek v. Wohlrab, supra.*  The Supreme Court of Illinois there said:

> This argument is without foundation.  The unity of interest required for the creation of a joint tenancy refers to equality among the co-tenants only as to their interest in the estate. . . .  [U]nity of interest [does not] relate to an equality in the contribution of purchase money.

*Id.,* 115 N.E.2d at 766.  We share that view.

■  We think Carozza misconstrues the trial court's opinion.  The trial court did acknowledge that the source of the $41,000.00 was Maple Drive, a property in which Murray had no interest.  It did not, however, find that Carozza was entitled to credit for the entire $41,000.00.  The court said:

> Now, what about the source of cash outlay?  Okay, if I assume that the $41,000.00 belongs entirely to Mr. Carozza and I'm not sure that it does because during the period of time the property was being managed by her and half the time it was being held it was being held by—during the period that they lived together.

Thus, the trial court's analysis was designed to give the benefit of any doubt to Carozza.  Having done that by assuming that Carozza was due all credit for the $41,000.00, the court did not find the disparity in cash outlay to be so great as to require a distribution different than fifty-fifty.  Therefore, it was not necessary for the court to determine the extent of Murray's interest in the $41,000.00.  See *Levin v. Levin,* 43 Md.App. 380, 405 A.2d 770 (1979).

In any event, having reviewed the record and carefully analyzed the court's findings, we perceive no error.

JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.