PHYLLIS K. MOAT *vs*. WILLIAM DUCHARME.

No. 89-P-63.

Hampshire. January 12, 1990. - June 29, 1990.

Present: FINE, CUTTER, & JACOBS, JJ.

*Real Property*, Joint tenancy, Partition. *Joint Tenants. Res Judicata.*

In a Probate Court proceeding by a joint tenant seeking partition of certain real property, the judge erred in concluding that the parties each owned a one-half interest in the property, either on the basis that equality of ownership was established as matter of law, inasmuch as the respondent had properly raised a claim that the parties' interests were not equal [751], or under the principle of issue preclusion, inasmuch as a judge's findings in a separate action between the parties, establishing the petitioner's right to use and possession of the property, did not adjudicate the nature and extent of her interest [751-754].

PETITION filed in the Hampshire Division of the Probate and Family Court Department on November 30, 1984.

The case was considered by *Andrea F. Nuciforo*, J.

*Benjamin A. Barnes* for William Ducharme.

*Charles K. Stephenson* for Phyllis K. Moat.

JACOBS, J. When their long-term relationship evolved from meaningful to just plain mean, Phyllis K. Moat and William Ducharme sued one another in the Superior Court. A judge of that court, sitting without jury, adroitly sorted out and decided various claims of conversion, embezzlement, battery, and abuse of process. Amidst the vituperation was a claim by Moat that Ducharme's physical abuse had resulted in her being constructively deprived of the use of their jointly owned residence in Northampton; she also sought partition of that residential property. The Superior Court judge correctly ruled that exclusive jurisdiction over partition proceedings was in the Probate Court. See G. L. c. 241, § 2. He, therefore, expressly limited his decision with respect to the resi-

dential property to an order restraining Ducharme from interfering with Moat's use of it.

Moat later filed a petition in the Hampshire Probate Court, seeking partition of the residential property. Ducharme has appealed to us from an interlocutory decree[1] of that court which ordered partition by sale and decreed that Moat and he each owned a one-half share of the property.

So far as can be determined from the sparse record before us, the decree was entered without a hearing and probably[2] was occasioned by the allowance of a motion for summary judgment filed in the Probate Court proceeding by certain judgment creditors of Ducharme who had been permitted to intervene pursuant to G. L. c. 241, § 6. The motion for summary judgment relied on the preclusive effect of written findings filed by the Superior Court judge and asserted that "no material issue of fact or law exists over the nature and extent of [Moat's] and [Ducharme's] respective interests in [the] Northampton . . . property." Ducharme filed a written "objection" to the petition for partition and an affidavit denying that Moat held any interest in the property. Given the absence in our record of any indication of an evidentiary hearing before the Probate Court judge,[3] we infer that the decree necessarily was based upon either: (1) a determination that a joint tenancy conclusively established an equality of ownership interests as matter of law; or (2) a conclusion that the express findings in the Superior Court action, under the doctrine of res judicata, precluded litigation in the Probate Court of Ducharme's objection to Moat's claim of a one-half ownership interest. We hold that each of these assumed grounds is erroneous.

---

[1]An interlocutory decree entered pursuant to G. L. c. 241, § 10, is, in effect, a final judgment appealable as of right. *Jefferson* v. *Flynn*, 348 Mass. 165, 166 (1964). *Asker* v. *Asker*, 8 Mass. App. Ct. 634, 635 (1979).

[2]Ducharme, in his "motion for a new trial," filed after the issuance of the decree, stated that the motion for summary judgment was then pending. Moat, in her brief, represents that the motion for summary judgment had been allowed. The docket is inconclusive.

[3]In the circumstances, we treat Ducharme's burden of demonstrating that the equities were not considered, *Gleason* v. *Galvin*, 374 Mass. 574, 576 (1978), as having been satisfied.

1. *Equality of ownership.* At common law, a conveyance to joint tenants created equal undivided interests. 2 American Law of Property § 6.1 (Casner ed. 1952 and supp. 1977). Recognition of such equality of interests is implicit in our decisional law. See *Varnum* v. *Abbott*, 12 Mass. 474, 476 (1815); *Cross* v. *Cross*, 324 Mass. 186, 189 (1949); *Fekkes* v. *Hughes*, 354 Mass. 303, 304 (1968); *In re Addario*, 53 Bankr. 335 (D. Mass. 1985). Upon dissolution of a joint tenancy, however, that equality is presumptive rather than conclusive. The statutory direction of G. L. c. 241, § 31, that partition be "just and equal" has been interpreted as meaning "just and equitable." *Batchelder* v. *Munroe*, 335 Mass. 216, 218 (1957). "The equality is not absolute but is an equality according to the respective rights of the parties." *Id.* at 218. Confronted with a petition for partition, a coowner may attempt to show that his beneficial interest is "different from that indicated by the record title." *Asker* v. *Asker*, 8 Mass. App. Ct. 634, 638 (1979).[4] The right to attempt such a showing may be subject to the procedural condition that the claim of inequality of interests be "properly raised" in the partition proceeding. *Id.* at 637. Ducharme's objection to the petition and his affidavit satisfy this condition.

2. *Res judicata.*[5] The Superior Court's lack of jurisdiction over partition proceedings does not automatically prevent the operation of the principles of res judicata in the Probate Court. See *Harker* v. *Holyoke*, 390 Mass. 555 (1983). It

---

[4]Looking behind the record title upon dissolution of joint tenancies has been approved in other jurisdictions. See, e.g., *Jezo* v. *Jezo*, 23 Wis. 2d 399 (1964), and cases cited in *Asker* v. *Asker*, 8 Mass. App. Ct. at 637 n. 3 (1979). This approach also has been utilized in instances in which the coowners were not formally married to each other. *Carozza* v. *Murray*, 63 Md. App. 496 (1985). Partitions involving such circumstances no doubt will become commonplace in view of "what appears likely to be an increasing number of cases, concerned with unraveling the property interests of two unmarried people who became disaffected after living together for a long time as if husband and wife." *Sullivan* v. *Rooney*, 404 Mass. 160, 160 (1989).

[5]Res judicata is here used generically as comprising "claim preclusion" and "issue preclusion." For an explanation of this terminology, see *Heacock* v. *Heacock*, 402 Mass. 21, 23 n.2 (1988), and *Bagley* v. *Moxley*, 407 Mass. 633, 636-637 (1990).

does, however, prevent the application of the concept of claim preclusion.[6] See *Feener* v. *New England Tel. & Tel. Co.*, 20 Mass. App. Ct. 166, 169-170 (1985). Compare *Bagley* v. *Illyrian Gardens, Inc.*, ante 127, 128-131 (1989). *Harker* v. *Holyoke*, *supra*, is distinguishable from the case before us in that it involved an attempt to relitigate an issue in the Superior Court which was "identical in all significant respects" (*id.* at 556) with an issue which had been fully heard in a Housing Court trial, the results of which could have been appealed or otherwise directly attacked. The Supreme Judicial Court held that, notwithstanding the Housing Court's lack of subject matter jurisdiction, the parties were precluded from raising the jurisdictional question in an independent action. The case before us presents a situation in which the Superior Court recognized its lack of jurisdiction over partition proceedings and so ruled, as matter of law. It did not attempt to determine the matter of partition. Where a court either expressly or impliedly recognizes that the determination of a certain claim before it is beyond its competence, it is open to another court, whose jurisdiction is not so limited, to address that claim. *Feener* v. *New England Tel. & Tel. Co.*, *supra* at 170.

The case in the Probate Court is, nevertheless, subject to the principles of issue preclusion if the record supports Moat's contention that the question of ownership interests was fully litigated in the Superior Court. The findings of the Superior Court judge inform us that the property in question was conveyed to Ducharme as a gift in 1973. The following year, he deeded it to Moat in a transaction which the judge found "was a sham for the sole purpose of frustrating a potential judgment creditor." In 1975, Moat conveyed the property to herself and Ducharme as joint tenants. The judge found that this conveyance "was intended to make the house and land available to Moat and her two boys if Ducharme should die." This conclusion was similar to that asserted by

---

[6]"Claim preclusion . . . prohibits the maintenance of an action based on the same claim that was the subject of an earlier action between the same parties or their privies." *Heacock* v. *Heacock*, 402 Mass. at 23 n.2.

Ducharme in his Probate Court affidavit. The Superior Court judge also found that "Moat, as joint tenant, has equal rights to [the] property" without indicating whether he was referring to an equality of ownership interests or an equality of rights of use and occupation or both. This finding was immediately preceded by an ambiguous reference to Moat's intentions as of the time of her execution of the deed to herself and Ducharme. The only other findings in the record before us that relate to the property in question consist of the Superior Court judge's expressed disbelief of both parties' assertions concerning certain "rent" checks and household expenses.

A party seeking to preclude relitigation of a fact issue "must establish that the issue . . . actually was litigated and determined in a prior action between the parties . . . and that the determination was essential to the decision in the prior action." *Heacock, supra* at 25. Restatement (Second) of Judgments § 27 (1982). 18 Wright, Miller & Cooper, Federal Practice and Procedure § 4416 (1981). The only decision of the Superior Court judge relating to the residential property was his order restraining Ducharme from interfering with Moat's use. That order reflects more than a mere exercise of equitable discretion. By its permanence, it indicates a conclusion that Moat possessed some ownership interest. However, a determination of the precise extent of that interest was not essential to ordering the injunction.

Each joint tenant enjoys a right to use and possess the entire property subject to the similar right of each cotenant of the same property. 2 American Law of Property, *supra,* § 6.2. 4A Powell on Real Property §§ 603[1] and 617[4] (1989). That right attaches whether the ownership interests of joint tenants are treated as undefined or as presumptively equal. Therefore, the findings and restraining order of the Superior Court judge preclude further inquiry only into the issue of whether Moat held the minimal ownership interest requisite to a right of use and possession. They do not preclude judicial inquiry as to the nature and extent of that interest.

That portion of the interlocutory decree which determined that the parties each owned one-half of the property is vacated, and the case is remanded to the Probate Court for further proceedings consistent with this opinion.

*So ordered.*