JUDY R. LARSON *vs.* RICHARD A. LARSON.

No. 90-P-1297.

Middlesex. December 17, 1990. - April 1, 1991.

Present: ARMSTRONG, FINE, & LAURENCE, JJ

*Divorce and Separation*, Separation agreement, Jurisdiction, Child support, Attorney's fees. *Jurisdiction*, Probate Court. *Probate Court*, Jurisdiction. *Contempt. Res Judicata. Judgment*, Preclusive effect. *Practice, Civil*, Relief from judgment, Appeal, Attorney's fees.

A Probate Court judge had jurisdiction, pursuant to a separation agreement incorporated into, but explicitly surviving, the parties' divorce judgment, to enter civil contempt judgments against the husband for refusing to make financial support payments on behalf of an adult child who had attained the age of twenty-one, notwithstanding the husband's contention that, despite the agreement's bestowing jurisdiction on the Probate Court over disputes as to its meaning and application, the wife was precluded from relying on the agreement by the doctrines of claim preclusion [426-427], issue preclusion [427], and judicial estoppel [427-428] because she had waived her rights to child support pursuant to the agreement by allowing certain earlier litigation to proceed solely on the basis of the age provisions of G. L. c. 208, § 28 [424-428].

COMPLAINT for divorce filed in the Middlesex Division of the Probate and Family Court Department on June 20, 1979.

Proceedings for contempt, commenced on May 29, 1990, and August 29, 1990, respectively, were heard by *Edward M. Ginsburg*, J., and motions for a new trial and for relief from judgment were also heard by him.

*Edwin C. Hamada (Theresa Kelly Banash* with him) for Richard A. Larson.

*Stephen C. Maloney* for Judy R. Larson.

LAURENCE, J. The present appeal contests the validity of Probate Court contempt judgments against Richard A. Larson (Richard) for refusing to make child support payments to Judy R. Larson (Judy), as required by a separation agree-

ment (the agreement) incorporated into, but explicitly surviving, the parties' divorce judgment.[1] Richard presents several arguments against the judgments and the judge's refusal to set them aside on his motions. All of them condense to a single proposition: that the Probate Court lacked jurisdiction to enter the judgments. Richard's position, however, is based upon a misreading of a prior opinion of this court and a misapplication of principles of res judicata and related doctrines. We, accordingly, affirm the judgments.

1. *The prior proceedings.* Richard, a surgeon, and Judy, a homemaker, obtained a judgment of divorce nisi from the Middlesex Probate and Family Court on March 31, 1983. The judgment ordered the parties to comply with the provisions of the agreement, which expressly survived the judgment with independent legal significance. The agreement required that Richard would pay Judy, as unallocated alimony for her support and that of the three children of the marriage (who were then nineteen, sixteen, and thirteen years old), the sum of $2,500 per month.[2]

The agreement provided that the monthly payments were to continue until certain specified events. The only terminating event relevant to this litigation was to occur when all of the children became "emancipated according to law." The record is silent as to what the parties intended by that phrase. Upon that event, Richard's payments to Judy would cease to include child support and would equal thirty percent of his annual gross earned income. The agreement also obligated Richard to pay the children's educational and related expenses. Finally, it declared that any "dispute or misunderstanding arising under this [a]greement as to the meaning,

---

[1]Richard filed two separate notices of appeal: one on August 24, 1990, from the August 1, 1990, contempt judgment and the August 22, 1990, denials of his motions for new trial and relief from that judgment; and the other taken on September 28, 1990, from a judgment of contempt entered September 26, 1990. The Probate Court combined the two appeals in its assembly of the record, and both appeals were entered as one case on the docket of this court.

[2]By January, 1987, the monthly payments had been adjusted upward, by a formula in the agreement, to $2,600, where they appear to have remained as of the date of this appeal.

interpretation, application or performance of any provision of this [a]greement . . . shall be submitted to the Middlesex Probate and Family Court if the parties are unable to resolve the question by mutual agreement."

When the youngest child, Elizabeth, turned eighteen on April 1, 1987, Richard unilaterally decreased the amount of his monthly payments to Judy to one-twelfth of thirty percent of his annual gross earned income, which had by then been much diminished as a result of his voluntary reduction of the level of his medical practice. On August 24, 1987, Judy filed a complaint for contempt alleging that Richard's reduction in payments as of April 1, 1987, and each month thereafter violated the divorce judgment.

It was "apparent that Richard's reduction in support payments was pursuant to the emancipation clause of the agreement." *Larson v. Larson*, 28 Mass. App. Ct. 338, 339 n.1 (1990) (*Larson I*). Richard appears to have implicitly adopted the position that Elizabeth's eighteenth birthday on April 1, 1987, had triggered the support termination provision of the agreement and that the monthly child support obligation had thereupon ceased.[3] Inexplicably, however, neither party referred to or relied upon the agreement in the course of the proceedings on Judy's 1987 complaint for contempt. Instead, they tried the case on the single legal theory that G. L. c. 208, § 28, governed Judy's entitlement to child support.[4] Richard submitted as the outcome-determinative is-

---

[3]General Laws c. 231, § 85P, as inserted by St. 1975, c. 315, § 1, declares that any person eighteen years old "shall for all purposes . . . be deemed of full legal capacity . . . . " General Laws c. 4, § 7, cl. fifty-first, defines "age of majority" as eighteen years of age. Neither party has cited to these statutes. No statute appears to define "emancipation." It is clear that there is no fixed age when emancipation occurs; it does not automatically occur on reaching the age of majority. *Turner* v. *McCune*, 4 Mass. App. Ct. 864, 865 (1976).

[4]General Laws c. 208, § 28, as amended through St. 1976, c. 279, § 1, provides, in pertinent part, that "[t]he court may make appropriate orders of maintenance, support and education of any child who has attained age eighteen but who has not attained age twenty-one and who is domiciled in the home of a parent, and is principally dependent upon said parent for maintenance."

sue that Judy failed to satisfy one of the two statutory standards authorizing the court to order support for a child between the ages of eighteen and twenty-one, namely, whether Elizabeth was "principally dependent" upon her for maintenance. See *Larson I, supra* at 339-341.

The judge disagreed with Richard and found for Judy on the "sole question" whether Elizabeth was "principally dependent" upon her. *Id.* at 340.[5] On the first appeal, in addition to criticizing the judge's application of G. L. c. 208, § 28, Richard advanced a contention not made below: "that the judge erred in determining that Elizabeth was not 'emancipated according to law' as provided in the separation agreement . . . [because] under Massachusetts law a child becomes emancipated upon attaining the age of eighteen years." *Larson I, supra* at 340.

This court, however, rejected Richard's belated new argument in *Larson I*. We observed that the case had been tried below solely on the theory of the applicability of G. L. c. 208, § 28, reminded Richard of the settled principle that the theory of law on which by assent a case is tried cannot be disregarded when the case comes before an appellate court for review, and stated unambiguously that "[w]e, therefore, do not consider the question whether Elizabeth was emancipated as matter of law upon attaining the age of eighteen." *Larson I, supra* at 341. We affirmed the contempt judgment on the issue of principal dependency under G. L. c. 208, § 28, and authorized Judy to file a petition for appellate costs and fees.

2. *The present proceedings.* On April 1, 1990, when Elizabeth, then a college junior, became twenty-one, Richard again curtailed his child support payments, without explanation. On May 29, 1990, Judy filed a new complaint for contempt for the full amounts of the April and May, 1990, pay-

---

[5]The judge found Richard in contempt on September 30, 1988, and ordered him to pay Judy $33,524.29, consisting of $24,674.00 in arrears, $3,284.55 in interest, and $5,565.74 in costs and attorneys' fees.

ments.[6] Richard, who had by that time left Massachusetts to reside in Maine, was personally served on June 13, 1990, with copies of the complaint and the summons, which ordered him to appear at the Probate Court at 9:00 A.M. on August 1, 1990. At some point in early June, 1990, Richard's then attorney also received copies of these documents from Judy's attorney.

Meanwhile, Judy, acting pursuant to the authorization of *Larson I, supra* at 343-344, had filed a petition with this court for counsel fees and costs in connection with the first appeal on May 24, 1990. Though given a reasonable time to respond to the petition, Richard failed to do so, and neither he nor his counsel appeared at the scheduled June 26, 1990, hearing on the petition. On June 26, 1990, Richard was ordered by this court to pay Judy $9,193.57 as counsel fees and costs on or before July 26, 1990. The order further provided that "[a]ny proceedings necessary to enforce payment are to be brought in the Probate Court." On July 27, 1990, Judy, having heard nothing from either Richard or his counsel, amended her complaint for contempt by adding claims for his failure to pay the fees and costs awarded by this court, as well as for his continued failure to make $2,600 payments for June and July, 1990.

At the appointed August 1, 1990, contempt hearing before the Probate Court, neither Richard nor his counsel was present. No answer had been served to either the original or the amended complaint, nor was any motion for continuance filed. The judge found Richard in contempt and ordered him to pay Judy $27,083.79 in arrears, interest, and attorney's fees.[7] This judgment finally stirred Richard to action. On August 10, 1990, his then counsel filed motions for a new trial and for relief from the August 1, 1990, judgment, pursuant to Mass.R.Dom.Rel.P. 59(a), 60(b)(4), and 60(b)(6) (1975). The sole ground for these motions was the assertion

---

[6]Richard had additionally failed to make a payment for the month of October, 1988, which Judy also sought in her May 29, 1990, complaint.

[7]This amount represented $24,793.57 in arrears, $268.57 in interest, and $2,021.65 in attorneys' fees.

that the contempt judgment was void because the Probate Court lacked jurisdiction to enter any support orders with respect to a nondisabled child over the age of twenty-one. Accompanying the motions was an affidavit of Richard's then counsel attempting to explain the failure to appear at the August 1, 1990, hearing on the basis of the counsel's emergency surgery just before the hearing, his inability to contact Richard following receipt of Judy's May 29, 1990, complaint, and a failed effort to negotiate a continuance with Judy's counsel on the eve of the hearing.[8]

On August 22, 1990, the judge held a hearing on Richard's motions. Richard appeared personally and by new counsel. His new attorney elaborated the lack of jurisdiction argument by propounding the theory that Judy was estopped by the prior proceedings to assert the applicability of the separation agreement, or to deny G. L. c. 208, § 28, as the sole basis for the Probate Court's jurisdiction. Since that statute conferred power to make support orders only as to children between the ages of eighteen and twenty-one and since the parties' youngest child was concededly over twenty-one, counsel argued that Richard was entitled to relief or a new trial on the ground of "mistake of law . . . [namely] the entry of a judgment without jurisdiction. It is our position that under Section 28, this court cannot make an order for a [nondisabled] child over the age of twenty-one . . . ."

The judge questioned Richard at the August 22, 1990, hearing as to his reasons for not appearing or taking any action earlier. Richard testified, inconsistently with his former counsel's affidavit, that he had in fact discussed matters with his former counsel after reviewing Judy's May, 1990, complaint and was told by counsel that he did not have to appear. The judge also received an affidavit from Judy's attorney materially contradicting the affidavit of Richard's former

---

[8]Judy's attorney had been willing to assent to a continuance of the August 1 hearing on the condition that Richard pay the undisputed amounts he owed Judy (the $2,600 for October, 1988, support and the $9,193.57 in fees and costs for *Larson I*) on or before August 1, 1990. No agreement ensued because Richard failed to make those payments as requested, although he did pay them at the August 22, 1990, hearing on his motions.

counsel regarding the events surrounding that counsel's late July request for a stipulated continuance. With all this in hand, the judge denied Richard's motions (later recalling that he simply did not believe Richard's explanation for his nonappearance). Richard took a timely appeal from the denials and from the August 1, 1990, contempt judgment on August 24, 1990.

Judy then filed a second complaint for contempt, on August 29, 1990, alleging that Richard had failed to pay $15,290.22 of the $27,083.79 due under the August 1, 1990, contempt judgment. This time Richard answered, repeating his contention that the court's August orders were void as matter of law for want of jurisdiction, and also filed a motion to stay all proceedings until the determination of his pending appeal. At a September 26, 1990, hearing on Judy's second complaint and Richard's stay motion, Richard's counsel reiterated his previous position that Judy "is estopped from denying it's anything but a [G. L. c. 208] Section 28 case, and that the case turned on the relatively narrow issue of whether you [the judge] exceeded your authority in ordering support for a child over the age of twenty-one."

The judge denied Richard's stay motion, adjudged him in contempt, and ordered him to pay Judy $18,590.22, an amount Richard conceded he was able to pay.[9] Richard appealed from this judgment of contempt and obtained from a single justice of this court a stay of proceedings on both outstanding judgments pending resolution of his appeals.

3. *The Probate Court's jurisdiction.* Richard's entire argument on appeal depends upon the success of his proposition that the Probate Court's judgments are void as matter of law because the court lacked jurisdiction to order support once Elizabeth turned twenty-one.[10] Richard correctly states that

---

[9]The components of this sum were the $15,290.22 from the August 1, 1990, judgment, plus a $2,600 payment for September, 1990, and $700 for attorneys' fees. Judy's counsel had sought $2,944.10 in attorneys' fees and costs.

[10]Richard does not argue here what would objectively appear to be the only substantial point to be litigated in this case, namely, whether he should be relieved of his support obligation because Elizabeth has become

a Probate Court judge has no authority under G. L. c. 208, § 28, to make support orders for a child over twenty-one. He then insists that the court's only jurisdiction in this case was provided by that statute, leaving it without any basis to order support for a child such as Elizabeth.

Without citing or discussing *Kotler* v. *Spaulding*, 24 Mass. App. Ct. 515, 517-520 (1987), Richard implicitly acknowledges that, where a divorce judgment provides by its terms for child support past the age of twenty-one, the Probate Court retains the power to enforce the provision through contempt orders. He contends, however, that the parties' agreement here is no longer a source of jurisdiction, despite its express bestowal of jurisdiction on the Probate Court over disputes as to its meaning and application. Judy is barred from resort to the agreement, he maintains, by the doctrines of claim preclusion, issue preclusion, and judicial estoppel. He asserts that *Larson I* operates as res judicata, precluding Judy from relying on the agreement, because she has waived her rights to child support pursuant to the agreement. The alleged waiver consisted of allowing the earlier litigation to proceed solely on the basis of G. L. c. 208, § 28.

---

"emancipated according to law"; nor does he assign as error anything done by the judge that rejected such an argument or prevented him from making such an argument below. Instead, he asserts that, "[b]ecause the original contempt [in *Larson I*] was pre-tried, tried and decided on appeal as a Section 28 proceeding, traditional views of emancipation and the factors employed to determine whether it has occurred were not then and are not now applicable to the facts of the case." Both Judy's May 24, 1990, contempt complaint and July 27, 1990, amended contempt complaint alleged the continued applicability of Richard's obligation to make monthly support payments "until the youngest child is emancipated according to law." Although Richard was not deemed to have admitted these averments by his failure to deny them in a responsive pleading (there is no rule in the domestic relations rules corresponding to Mass.R.Civ.P. 8(d), 365 Mass. 750 (1974); see Kindregan & Inker, Family Law & Practice § 184, at 267 [1990]), and although Richard's September 24, 1990, answer did deny the same allegation contained in Judy's August 29, 1990, contempt complaint and averred further that "the claim for child support is barred by the child's emancipation and her having obtained the age of 21," he did not, as noted above, subsequently press or argue this point, but rather appears to have expressly abandoned it.

Richard's argument[11] is without merit. The contention that Judy waived reliance on the agreement ignores the determinative fact that this appeal does not deal with the same claims, issues, or arguments as did *Larson I*. That decision announced, as emphatically as could be done, that it did not address the agreement, let alone consider the meaning or application of the term "emancipated according to law." *Larson I, supra* at 341.

a. *Claim preclusion.* This doctrine, traditionally known as merger or bar, prohibits the maintenance of any action based on the same claim that was the subject of and was decided in an earlier action between the parties or their privies. *Heacock* v. *Heacock*, 402 Mass. 21, 23 (1988). *Bagley* v. *Moxley*, 407 Mass. 633, 636-637 (1990). It has no application to the instant matter because the contempt judgments appealed from constituted new claims based on different facts from those at issue in *Larson I*.

The original contempt judgment that gave rise to *Larson I*, dated September 30, 1988, involved claims for violation of the divorce judgment's monthly payment obligations through that date only, as did the *Larson I* opinion. The judgments at issue in the present appeal cover claims for subsequent payment violations, from April through September, 1990. These later violations were not and could not have been raised in the original action because the times for payment had not yet occurred or given rise to any cause of action in favor of Judy. Each violation of Richard's continuing monthly payment obligation under the divorce judgment constituted a new claim

---

[11]Richard did not affirmatively set forth estoppel or res judicata as defenses in his answer to Judy's August, 1990, contempt complaint, as required by Mass.R.Dom.Rel.P. 8(c) (1975); nor did he raise them in arguing against the judgment on her May, 1990, contempt complaint or her July, 1990, amended contempt complaint, which he never answered, contrary to Mass.R.Dom.Rel.P. 7(a) & 8(b) (1975). The judge nonetheless allowed Richard to present his jurisdictional argument during the hearings below, without objection from Judy, so the failure to plead was not fatal. Compare *Brash* v. *Brash*, 407 Mass. 101, 104 n.4 (1990); *Davidson* v. *Davidson*, 19 Mass. App. Ct. 364, 368 n.3 (1985). In any event, since the issues may recur as to future monthly payment obligations, we would choose to discuss them in the interest of judicial economy.

for preclusion purposes, as with any contract calling for continuous separate performances over a period of time or for payment of money in separate installments. See *Dunbar* v. *Dunbar*, 180 Mass. 170, 173 (1901), aff'd, 190 U.S. 340 (1903); *Phelps* v. *Shawprint, Inc.*, 328 Mass. 352, 356-358 (1952); 18 Wright, Miller & Cooper, Federal Practice & Procedure § 4409, at 77-78 n.11 (1981); 4 Corbin, Contracts §§ 948, 949, & 956 (1951). Accordingly, the doctrine of claim preclusion cannot provide a basis for Richard's jurisdictional argument.

b. *Issue preclusion.* This modern term for collateral estoppel prevents relitigation of an issue of fact or law determined in an earlier action when the same issue arises in a later proceeding, even though based on a different claim, between the parties or their privies. *Heacock, supra* at 23 n.2. The central requirements are that the issue sought to be foreclosed was actually litigated and was essential to the decision in the prior action. See *Cousineau* v. *Laramee*, 388 Mass. 859, 863 n.4 (1983); *Moat* v. *Ducharme*, 28 Mass. App. Ct. 749, 753 (1990).

Neither of these prerequisites obtains here. *Larson I* dealt exclusively with the propriety and sufficiency of the judge's finding that Elizabeth was "principally dependent" upon Judy under G. L. c. 208, § 28. No issue relating to the agreement was litigated or essential to the rulings in that prior action; indeed, they were expressly disavowed by both courts as a basis for their decisions. The prior action concerned Richard's support obligation to a child between eighteen and twenty-one; the present claim involves his obligation to a child over twenty-one. Issue preclusion has no application here.

c. *Judicial estoppel.* This term appears to describe the doctrine that a party who has maintained one position in a legal proceeding may not, in a subsequent proceeding between the same parties, assume a contrary or inconsistent position, at least when the prior position has been acted or relied upon by an adverse party. While this basic principle seems to be recognized in Massachusetts, see *Brown* v.

*Quinn*, 406 Mass. 641, 646 (1990), application of the doctrine would be inappropriate here because Judy has not taken contrary positions in the two lawsuits. It is perfectly consistent for her to have argued, in the prior case, that Elizabeth was principally dependent upon her for support, as defined by G. L. c. 208, § 28, and to argue, in the present action, that Richard remains bound to pay child support pursuant to the agreement. Cf. *Turner* v. *McCune*, 4 Mass. App. Ct. 864, 865 (1976) (emancipation is not automatic upon reaching the age of majority). Compare *Brown* v. *Quinn*, *supra* at 646 (argument that an appeal was premature estopped because it contradicted party's earlier position that judgment appealed from was final). Until Elizabeth turned twenty-one, Judy in fact had no occasion or necessity to resort to the agreement, since G. L. c. 208, § 28, provided a sufficient alternative basis to enforce Richard's support obligations.

In summary, Richard's res judicata arguments are inapposite. The Probate Court had ample sources of authority, including the agreement, to act on Judy's complaint, and its judgments were therefore not void for want of jurisdiction.

4. *Other arguments.* Richard's only contention on appeal not founded on his unsuccessful jurisdictional points is directed to the judge's alleged abuse of discretion in denying his rule 59(a) motion for a new trial. He presents, however, no reasoned analysis of the circumstances constituting the alleged abuse. Richard's cursory, three-sentence presentation does not assist the court with meaningful citation of authority and cannot be said to rise to the level of acceptable appellate argument under Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). See *Lolos* v. *Berlin*, 338 Mass. 10, 13-14 (1958); *Hastoupis* v. *Gargas*, 9 Mass. App. Ct. 27, 39 (1980). Richard's position with respect to the judge's refusal to grant him relief from the August 1, 1990, judgment under rule 60(b) makes no mention of any abuse of discretion by the judge. Rather, it rests entirely on the court's supposed lack of jurisdiction and consequent voidness of its judgments. Given the inconsistent statements of Richard and his attor-

ney as to the purported reasons for their failures to answer or appear at the August 1, 1990, hearing, as well as the conflicting affidavits of counsel regarding the background of the nonappearance, there was no abuse of discretion in the judge's denial of Richard's motions in any event. Deference is particularly due the judge's exercise of discretion because of his lengthy involvement in the proceeding. *Burger Chef Sys., Inc.* v. *Servfast of Brockton, Inc.*, 393 Mass. 287, 289 (1984).[12]

5. *Costs and fees on appeal.* Both parties have requested an award of counsel fees and costs in connection with this appeal. Richard's appeal having failed, he is not entitled to them. *Yorke Mgmt.* v. *Castro*, 406 Mass. 17, 20 (1989). Richard has conceded his ability to pay any judgments issued and is in a financial position to defray the costs of this appeal superior to that of Judy, who has prevailed. Judy was awarded fees and costs not only for the first appeal but also for the two 1990 contempt proceedings in the Probate Court, which awards Richard does not here contest. Therefore, as in the prior appeal, Judy may submit to this court a motion for counsel fees within thirty days after issuance of our rescript, in accordance with the procedural requirements of *Yorke Mgmt.* v. *Castro, supra* at 20. See *Larson I, supra* at 343-344.

*Judgments affirmed.*

*Order denying motion for new trial affirmed.*

---

[12]Since each monthly payment obligation under the agreement gives rise to a separate claim, see the discussion in part 3a, *supra* at 11-12, Richard remains free to raise any arguments he may have against enforcement of that agreement in a future proceeding, including whether Elizabeth has become "emancipated according to law." This court is unable to make such a determination on the present record, because the issue was not briefed or argued either before the Probate Court or on appeal.