PHILIP SHWACHMAN, trustee,[1] *vs.* JANE MEAGHER
(and a companion case).

No. 96-P-1678.

Worcester. February 11, 1998. - September 3, 1998.

Present: GREENBERG, LAURENCE, & BECK, JJ.

*Tenancy by the Entirety. Landlord and Tenant,* Tenancy at will.

Restatement of the law regarding tenancy by the entirety under deeds executed
   prior to February 11, 1980, with reference to the reforms effected by St.
   1979, c. 727, and St. 1989, c. 283. [430-431]
A Superior Court judge correctly concluded that a wife had an indefeasible
   right of survivorship in property she held in a tenancy by the entirety cre-
   ated in 1972. [431-432]
A Housing Court judge correctly concluded that a one-year tenancy at will
   was created by the acts of the parties under the terms of an expiring lease
   agreement. [433-434]

CIVIL ACTION commenced in the Superior Court Department on
July 24, 1995.

The case was heard by *Daniel F. Toomey,* J., on motions for
partial summary judgment.

SUMMARY PROCESS. Writ in the Worcester Division of the Hous-
ing Court Department on August 15, 1996.

The case was heard by *John G. Martin,* J., on a statement of
agreed facts.

*Scott S. Sinrich* for the plaintiff.
*Raymond J. Reed* for the defendant.

LAURENCE, J. These consolidated appeals arise out of a
Superior Court action to quiet title and a Housing Court sum-
mary process action for possession, both commenced by the ap-
pellant, Philip Shwachman. Shwachman was a judgment credi-
tor of Richard Meagher, husband of the appellee, Jane Meagher.
Richard and Jane owned certain property in West Boylston (the

---

[1] Of the New Seven Hills Trust.

locus) as tenants by the entirety under a 1972 deed. Shwachman obtained an execution against Richard in 1992 and in May, 1993, acquired Richard's interest in the locus by sheriff's deed.

In July, 1993, in settlement of a prior action for possession and rent that Shwachman had brought in the Housing Court (which is not involved in this appeal), Shwachman entered into an agreement for judgment with Jane (but not Richard), which was "approved" by a Housing Court judge (in a handwritten notation at the front of the agreement). Pursuant to that agreement, Jane agreed to transfer "her interest" in the locus to Shwachman, and Shwachman agreed to "lease back" the locus to Jane and allow her to remain in possession as a tenant until July 1, 1996, with the only rent obligation being Jane's payment of annual real estate taxes and utility bills as they came due, as well as annual property insurance premiums and maintenance costs. The agreement also stated that "[a] new tenancy shall not be created until July 1, 1996." Jane contemporaneously executed a duly recorded quitclaim deed (again containing no reference to Richard nor his signature) purporting to transfer "all of [her] right, title and interest in" the locus to Shwachman.[2]

In July, 1995, Shwachman's action to quiet title was filed in the Worcester Superior Court (on remand from the United States District Court for the District of Massachusetts) against the Meaghers and others not involved in this appeal (a number of the Meaghers's creditors who had recorded attachments against the locus, Richard's trustee in bankruptcy, and certain Worcester County Registry officials). On June 10, 1996, a Superior Court judge allowed Shwachman's motion for partial summary judgment against Richard but denied his motion for partial summary judgment against Jane. The judge proceeded to enter judgment pursuant to Mass.R.Civ.P. 56(c), 365 Mass. 824 (1974), in favor of Jane, ruling that as matter of law she had a right of survivorship in the tenancy by the entirety which was not alienable by

[2]Shwachman asserts (to support his argument, see note 5, *infra*, that it is inequitable to allow Jane to challenge the validity of her deed) that Richard lived with Jane on the locus from May, 1993, to July, 1996, and continued to do so as of the date Shwachman filed his brief. Nothing in the record, however, supports this contention. Shwachman's action for possession did not name or refer to Richard. Indeed, in the agreement for judgment, Jane promised "not to sublet, rent or allow any other individuals to occupy" the locus while she remained Shwachman's tenant.

her (so that her purported deed was void), nor subject to attachment by her creditors in the absence of Richard's consent.[3]

On July 15, 1996, Shwachman sent Jane ("inadvertently," he later claimed) two letters enclosing separately for her payment the current real estate tax bill and the annual insurance bill. Three days later, Shwachman's attorney wrote Jane informing her that her tenancy had expired as of July 1, 1996, and demanding that she vacate the locus. Jane did not leave and paid the transmitted bills in mid-August 1996, at virtually the same time that Shwachman filed his summary process action against her. On October 1, 1996, a Housing Court judge found, on agreed facts and the single issue whether a tenancy existed between the parties, that a new tenancy at will had been created as of July 1, 1996, for the term of one year ending June 30, 1997.

1. *The Superior Court action.* Shwachman argues that the Superior Court judge erred in denying effectiveness to Jane's 1993 deed. The law of Massachusetts, however, is and has long been clear on this subject and entirely supports the judge's ruling that Jane could not by her sole act effectively convey her only interest in the tenancy by the entirety, her right of survivorship, i.e., her right to become sole owner of the property upon the death of her husband. Unfortunately for Shwachman, his plausible claim clashes with and falls before the harsh fact that Massachusetts (perhaps uniquely among American jurisdictions) has regarded pre-1980[4] tenancies by the entirety exactly as they were treated at common law, "unaffected by the modern statutes designed to ameliorate the rights of married women at common law and to render more flexible and individual the

_____

[3]In an affidavit submitted by Jane in opposition to Shwachman's partial summary judgment motion against her, she averred not only that Richard did not consent to her 1993 conveyance to Shwachman, but also that she was not then aware of her rights as a tenant by the entirety.

[4]Substantial reforms that would conceptually support Shwachman's position, were the locus subject to a post-February, 1980, tenancy by the entirety, were made by St. 1979, c. 727, effective for tenancies created after February 11, 1980, but not for earlier tenancies by the entirety such as that of the Meaghers. See *Turner* v. *Greenaway*, 391 Mass. 1002, 1003 (1984). Under those reforms, either spouse can convey or encumber his or her interest in property held as tenants by the entirety without the other's consent. See *Coraccio* v. *Lowell Five Cents Sav. Bank*, 415 Mass. 145, 150-152 (1993). A subsequent statute, St. 1989, c. 283, codified as G. L. c. 209, § 1A, gave tenants by the entirety under deeds executed prior to February 11, 1980, the right to elect to convert their tenancy to one subject to the provisions of St. 1979, c. 727, through specified procedures, but the Meaghers had never done so.

property rights of husband and wife." *Bernatavicius* v. *Bernatavicius*, 259 Mass. 486, 487 (1927). The hoary common law doctrine was succinctly described by Blackstone in his Commentaries:

> "[N]either the husband nor the wife can dispose of any part [of such a tenancy] without the assent of the other, but the whole must remain to the survivor. . . ."

2 Blackstone, Commentaries *182 (citing both Littleton's Tenures and Coke on Littleton). The essence of the common law tenancy by the entirety, and the feature distinguishing it from other forms of concurrent ownership, was the wife's inchoate survivorship right, which the common law deemed "indestructible," *Coraccio* v. *Lowell Five Cents Sav. Bank*, 415 Mass. 145, 150 (1993), and inalienable except by the express written deed of both husband and wife. *Fowler* v. *Shearer*, 7 Mass. 14, 21 (1810).

The instant case is entirely governed by the common law, as reflected in such cases as *Lowell* v. *Daniels*, 2 Gray 161, 168-169 (1854) (wife's sole deed purporting to convey her interest in real estate was "absolutely void" without her husband's joint signature, even though the husband subsequently gave his own deed to the same party: "The law has rendered her incapable of such contract. . . . Her most solemn acts, done in good faith, and for full consideration, cannot affect her interest in the estate. . . . She cannot by her own act enlarge her legal capacity to convey an estate"); *Pierce* v. *Chace*, 108 Mass. 254, 258-259 (1871) (even when wife signed husband's deed assenting to his transfer of his interest in the tenancy by the entirety, her act was not legally binding on her nor was she equitably estopped to claim the estate upon her husband's death: "Her agreements . . . were made under a mistake as to her right of property, without fraud or intention to deceive. . . . [It was] a void conveyance of her real estate. She is not thus to be deprived of that protection which the law affords"); *Phelps* v. *Simons*, 159 Mass. 415, 417-418 (1893) (under the common law, the husband could sell or transfer all of his interest in an estate by the entirety, but the utmost that the transferee could receive was the right to possession and income during the husband's life with the possibility of absolute title should the husband survive the wife; and if the wife should survive, she would be entitled to the property absolutely); *Raptes* v. *Pappas*, 259 Mass. 37,

38-39 (1927) (creditor who obtained all of the debtor husband's interest in a tenancy by the entirety was entitled to immediate possession and enjoyment of the property, but nothing done by the husband alone could defeat the right of the wife to the whole estate should she survive her husband); *Bernatavicius* v. *Bernatavicius*, 259 Mass. at 487 ("A conveyance to a husband and wife as tenants by the entirety creates one indivisible estate in them both and in the survivor, which neither can destroy by any separate act"); *Licker* v. *Gluskin*, 265 Mass. 403, 406-407 (1929) (which the Superior Court judge rightly relied upon) ("[T]he interest of the wife [in a tenancy by the entirety] . . . may [not] be conveyed by her [or] attached by her creditors. . . . During coverture [the wife can] make no valid conveyance of any interest . . . [in the tenancy by the entirety] without the assent in writing of the husband. Her sole deed [is] void. . . . [T]he interest of the wife as tenant by the entirety is not during coverture subject to attachment, levy [or] sale"); *Krokyn* v. *Krokyn*, 378 Mass. 206, 211 (1979) ("[T]he wife's mere expectancy of title is neither alienable nor subject to execution . . ."); *West* v. *First Agric. Bank*, 382 Mass. 534, 543, 545-546 & nn. 16, 20 (1981) (reaffirming *Licker* v. *Gluskin* and noting that, for all of the modern criticisms directed at it, certain practical benefits inhered in a tenancy by the entirety, which still "made sense in common situations"); *Carey's Inc.* v. *Carey*, 25 Mass. App. Ct. 290, 295 (1988) ("Thus, generally, in 1977, any attempted conveyance of property held in a tenancy by the entirety by one tenant during the lifetime of the other was void. Both spouses had to join in a deed in order to convey the entire estate and destroy both survivorships").

Shwachman's several objections to the judge's voiding of Jane's deed because of her indefeasible right of survivorship are of no avail. His chief contention, that Richard's consent was unnecessary in 1993 because he "ha[d] no remaining interest" in the property, misapprehends the basic common law concepts underlying the tenancy by the entirety as exemplified in the cases cited above, namely, the merged unity of the husband and wife and the wife's incapacity to make a valid conveyance in the absence of the assent in writing of her husband. Even lacking any conventional property interest in the real estate, the husband was nonetheless viewed by the metaphysics of the common law as an inseverable part of the marital unity without whose participation the wife's act of deed was incomplete, and a nullity.

The Superior Court judge also correctly rejected Shwachman's other arguments attempting to resurrect Jane's deed: (a) the deed was not validated by the Equal Rights Act, G. L. c. 93, § 102, because Shwachman did not have standing to raise that contention on Jane's behalf, see *Harvard Law Sch. Coalition for Civil Rights* v. *President & Fellows of Harvard College*, 413 Mass. 66, 70-71 (1992); *Ellis* v. *Safety Ins. Co.*, 41 Mass. App. Ct. 630, 641 (1996), and because by its terms, the statute does not apply to discriminatory practices permitted by Massachusetts law at the time of its enactment in 1989; (b) the doctrine of estoppel by deed did not apply because Jane had not acquired good title at the time she executed the deed (and as matter of law could not while her husband still lived), and because her deed did not contain unqualified warranty covenants, see *Comstock* v. *Smith*, 13 Pick. 116, 119 (1832); contrast *Knight* v. *Thayer*, 125 Mass. 25, 27 (1878); *Mount Washington Coop. Bank* v. *Benard*, 289 Mass. 498, 500-501 (1935); and (c) the 1993 agreement for judgment in the Housing Court did not have a preclusive effect, as Shwachman urges under "the law of collateral estoppel," because no sufficiently final judgment on the merits occurred after actual litigation, see *Hutchins* v. *Nickerson*, 212 Mass. 118, 123 (1912); *Tausevich* v. *Board of Appeals of Stoughton*, 402 Mass. 146, 149 (1988); *Miles* v. *Aetna Cas. & Sur. Co.*, 412 Mass. 424, 426-427 (1992); *Moat* v. *Ducharme*, 28 Mass. App. Ct. 749, 752-753 (1990).[5]

2. *The Housing Court action.* There is no more merit in

---

[5]Shwachman makes a diffuse and conclusory argument suggesting that the doctrine of res judicata, i.e., claim preclusion, also somehow applies, but it manifestly does not, given the wholly different causes of action and substantive principles involved in the Superior Court action and the earlier Housing Court proceeding. No issue underlying the latter (which dealt solely with possessory rights) was essential to or dispositive of the prime issue in the former, viz., Jane's ownership interest in the locus as a tenant by the entirety. See *Larson* v. *Larson*, 30 Mass. App. Ct. 418, 426-427 (1991). On appeal, Shwachman makes an additional equitable argument (not made below), that of "equitable estoppel," based on his plea that Jane should not be allowed to challenge the validity of her deed because she has enjoyed "the benefit of her bargain" and consequently "comes to this court with unclean hands." Because Shwachman failed to preserve this point for appeal, it has been waived and we need not consider it. See *West Broadway Task Force* v. *Boston Hous. Authy.*, 414 Mass. 394, 397 n.2 (1993). We note, in passing, that (a) the sole authority Shwachman relies on for the proposition, *Carey's Inc.* v. *Carey*, 25 Mass. App. Ct. 290 (1988), is distinguishable, since it dealt with the same concept as estoppel by deed, not equitable estoppel, and in *Carey* the husband had expressly consented in writing to the wife's lease of their tenancy by the

Shwachman's attack on the Housing Court judge's ruling that a new tenancy under the preexisting terms had been created as of July 1, 1996, because neither party had taken any steps properly to terminate the prior tenancy under the 1993 agreement. Shwachman's argument to the contrary fails to take into account the narrow scope of our review with respect to the judge's findings of fact on the critical issues (which Shwachman fails to demonstrate were clearly erroneous, see Mass.R.Civ.P. 52[a], 365 Mass. 816 [1974]),[6] the express language of the 1993 agreement indicating on its face an intention to continue a lease arrangement beyond July 1, 1996, and Shwachman's own actions consistent with a renewed tenancy subsequent to that date.[7]

The judgments of the Superior Court and the Housing Court challenged by these appeals are, accordingly, affirmed.

*So ordered.*

---

entirety, making the discussion of estoppel therein dictum; and (b) traditional equitable estoppel could not have arisen here, because Jane's quitclaim deed made no representation as to her interest in the property at all, much less one inconsistent with the fact, of which Shwachman must be deemed to have been fully aware, that it was a pre-1980 tenancy by the entirety, so that he could not have reasonably relied on Jane's agreement to his legal detriment. See *Hall* v. *Horizon House Microwave, Inc.*, 24 Mass. App. Ct. 84, 93 (1987).

[6]Whether a new tenancy was created after June 30, 1996, and on what terms were issues of fact to be determined in light of all the circumstances and the permissible inferences therefrom. See *Benton* v. *Williams*, 202 Mass. 189, 193 (1909); *Moskow* v. *Robinson*, 276 Mass. 16, 18-19 (1931); *Talbot* v. *Rednalloh Co.*, 283 Mass. 225, 230 (1933), and cases cited.

[7]Forewarned by the adverse Housing Court ruling in October, 1996, Shwachman presumably would have been able to forestall a repetition of his "inadvertence" as July 1, 1997, drew near. See G. L. c. 186, § 12. The record is, however, silent as to subsequent developments.