D.A.C. (husband) and L.M.C. (wife) were divorced after a four-day trial in 2013, and thereafter continued to litigate a number of matters in the Probate and Family Court, the Superior Court, and this court. In the case before us, each party filed a complaint for civil contempt; after a trial, a judge of the Probate and Family Court (who was not the judge who presided at the divorce trial) issued a contempt judgment against the husband on the wife's complaint. No contempt judgment entered against the wife.[2] The husband appeals, arguing that the hearing was unfair because, inter alia, the judge was biased against him and wrongly found him in contempt. We affirm.
Contempt trial. The trial at issue here was limited to two remaining financial issues-the wife alleged that the husband had not transferred retirement funds to her as ordered in the divorce judgment, and the husband alleged that the wife had not paid her share of joint tax liability under the terms of that judgment. The husband had an opportunity to offer evidence to dispute the contempt allegations against him, and to argue that the monies the wife owed him should be offset by the amount that the divorce judgment ordered him to transfer to the wife from his retirement account by rollover or qualified domestic relations order (QDRO). He also had an opportunity to cross-examine the wife on the status of her tax payments.
The dispute centers upon two provisions in the divorce judgment, which provide as follows:
"13. [The husband] shall transfer to [w]ife $6992.00 from his retirement funds by rollover or by [QDRO]. Any costs associated with the drafting of a QDRO shall be paid equally by the parties.
"...
"16. Each party shall pay one-half (1/2) of all debts, interest, and penalties owed to the Internal Revenue Service and/or the Massachusetts Department of Revenue."[3]
Both parties appeared and were represented by counsel at the June 6, 2016, contempt trial. As noted, the husband now argues that the judge conducting the contempt trial was unfair to him and that the finding of contempt was erroneous. In addition, he contends that the judge erred when he refused to continue the trial to permit the husband's expert to testify in person regarding the parties' joint Federal tax liability and the remaining monies each owed.[4] The husband argues that the expert, who was unavailable to appear at the hearing until later in the afternoon due to a doctor's appointment, should have been allowed to testify by "audio-visual means"; he also insists that it was not necessary for the hearing to be held on June 6 because the matter, which had been pending since 2014, was not time sensitive. We are not persuaded.
Trial judges have "extensive discretion" with respect to the admission of expert testimony, and appellate courts review these decisions exercising "great deference." Beaupre v. Cliff Smith & Assocs., 50 Mass. App. Ct. 480, 485 (2000). In order to show an abuse of discretion here, the husband has the sizeable burden of demonstrating that "the judge made a clear error of judgment in weighing the factors relevant to the decision, ... such that the decision falls outside the range of reasonable alternatives." L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014) (quotation omitted). The husband has failed to meet this burden. We discern neither error, nor abuse of discretion, in the judge's refusal to admit opinion evidence of an absent expert witness-who, as the husband's counsel conceded, had never appeared "anywhere on a witness list"-or in declining to continue the trial when both parties were present, represented by counsel, and otherwise ready to proceed.[5]
Complaint against the wife. The husband claims that the judge misinterpreted paragraph 16 of the divorce judgment regarding the wife's obligation to contribute to their joint tax liability. In an earlier appeal, this court concluded that "[a]s for the tax liabilities," the divorce judge properly "considered the factors enunciated in G. L. c. 108, § 34," and her "findings and rulings [were] clear and supported by the record." D.A.C. v. L.M.C., 87 Mass. App. Ct. 1120 (2015). In the findings and memorandum of decision underlying the divorce judgment, the divorce judge found that the parties jointly owed $16,000 in Federal income taxes for the tax years 2009 and 2010, and $6,000 in State taxes and that "each party [was] responsible equally for these obligations" (emphasis added). The language there speaks for itself. See Home Depot v. Kardas, 81 Mass. App. Ct. 27, 28 (2011), quoting from Jarosz v. Palmer, 49 Mass. App. Ct. 834, 835 (2000), S.C., 436 Mass. 526 (2002) (court may consider "facts of which judicial notice may be taken").
The husband counters that, at the time of the divorce judgment, the wife had filed separate tax returns, incurring additional joint obligations that ought to alter the division described in the judge's decision.[6] However, as the husband testified at the contempt trial, he never filed a motion for reconsideration or for relief from judgment, or addressed before the divorce judge in any way his present argument that, in fact, the wife owed a different amount. The contempt judge tried repeatedly, albeit unsuccessfully, to explain to the defendant and his counsel that he could not hold the wife in contempt for failing to pay to the husband an amount that never had been ordered by the court.[7] We agree with the judge's analysis of the issue and see no error.[8]
Contempt judgment against the husband. "[A] civil contempt finding must be supported by clear and convincing evidence of disobedience of a clear and unequivocal command." Birchall, petitioner, 454 Mass. 837, 853 (2009). An "unequivocal command" is one that provides "adequate notice of the required ... activity." Lynch v. Police Commr. of Boston, 51 Mass. App. Ct. 772, 776 (2001) (quotation omitted).
Here, the judge properly found the husband in contempt for failing to comply with the divorce judgment, which ordered him to transfer to the wife from his retirement funds, "by rollover or by [QDRO]," the amount of $6,992. We are satisfied that the ordered transfer of retirement funds "was a clear and unequivocal command of the sort required to support a complaint for contempt." Hoort v. Hoort, 85 Mass. App. Ct. 363, 365 (2014). The husband, by his own admission, failed to comply with the terms of that order.[9]
The husband's defense was that, in his view, the wife owed him more money than he owed her, by reason of the claimed payment for the joint tax obligation, combined with a default judgment that he had obtained against her in another action pending in the Superior Court. In the Superior Court case, filed against the wife and her mother, the husband had alleged defamation because the two had made serious allegations about the husband's conduct, claims that the divorce judge did not credit. The husband cites no authority for the proposition that he was permitted, unilaterally, to ignore the order of the divorce judge and recalculate the parties' (alleged) respective financial obligations himself. We note that the husband's calculations are, to say the least, in error. Moreover, at the time of the contempt trial, although the Superior Court judge had entered a default judgment in favor of the husband in the defamation case, he had not yet received an award of damages. Finally, we note that the defamation judgment subsequently was vacated in this court. Ceruolo v. Garcia, 92 Mass. App. Ct. 185, 192 (2017). See Home Depot v. Kardas, 81 Mass. App. Ct. at 28 (court "may take judicial notice of the docket entries and papers filed in separate cases"). In sum, we are satisfied that there was ample support for the contempt judgment.
Motion for recusal and allegation that the trial was unfair. Much of the husband's brief is devoted to his repeated allegations that he was not given "a fair and unbiased hearing."[10] We disagree. After careful review of the entire transcript, we are satisfied that the husband's claim that the judge's comments and conduct during the contempt trial indicated not only a bias, but a prejudgment of the matter, are unfounded, as is his contention that the judge showed disrespect for the husband's attorney on a number of occasions.[11] "Generally, recusal is a matter left to the discretion of the judge." Correia v. Correia, 70 Mass. App. Ct. 811, 818 (2007). The issues raised by the husband in support of his recusal requests essentially relate to his disagreement with the judge's evaluation of the evidence; the judge clearly was frustrated with the husband's dogged insistence that his assessment of the circumstances was correct and that the judge was wrong. "Considered in context, the isolated comments cited by [the husband] [were] insufficient to require the judge's disqualification."[12] Id. at 818-819.
Judgment of contempt dated June 28, 2016, affirmed.

It does not appear from the record before us that any action was taken on the husband's complaint for contempt against the wife.

With regard to paragraph 13 of the divorce judgment, the divorce judge explained in her findings and memorandum of decision that "[t]he amount depleted from [the wife's] retirement accounts ($17,530.00 + $1,885.00 = $19,415.00) are attributed to her. This amount shall be offset against [the husband's] retirement funds of $33,400.00. [The husband] shall transfer one-half of the difference in the parties' retirement funds ($6,992.00) to [the wife] via rollover or [QDRO]."
With regard to paragraph 16, the judge stated in her findings and memorandum of decision that "[t]he parties fell behind in paying their income taxes in 2009 and 2010. They owe federal taxes in the amount of $16,000.00 and state taxes in the amount of $6,000.00, which are now due according to a payment plan which requires payments of $120.00 per week. As this is a joint marital debt, each party shall be responsible equally for these obligations" (emphasis added).

In an opinion letter dated June 2, 2016, the husband's expert stated that, after applying the husband's payments totaling $17,041, the husband owed a remaining $3,409 toward the 2009 and 2010 Federal tax liability of $40,900; the expert also opined that the wife owed a remaining $4,062 after payments she had made that totaled $16,388.

We note that the complaint for divorce was filed on July 26, 2011; the judgment of divorce nisi-and the order at issue-was docketed on December 6, 2013. The husband's complaint for contempt is dated February 10, 2014. The wife's complaint for contempt is dated February 6, 2014. Motions to continue various hearings on those complaints were filed on April 30, 2014, September 22, 2014, September 23, 2014, and November 7, 2014. The husband also filed an assented-to motion to continue the contempt hearing on August 26, 2015; the wife filed an assented-to motion to continue the contempt hearing on August 28, 2015. Another agreed motion to continue was filed on October 23, 2015, and still another on January 19, 2016.

Apparently, the husband does not dispute the wife's testimony in the contempt trial that she had satisfied her obligation to pay her share of the monies specified in the divorce judgment, that is, one-half of $22,000, or $11,000.

The following exchanges are but two examples:
The court : "Well how am I going to hold somebody in contempt of court when there's no violation of a court order?"
The husband : "Your Honor, but she was assessed."
The court : "What you needed was a modification, not a contempt, or you needed to go back on a 299 to the Judge with newly discovered evidence.... The only thing I can hold somebody in contempt for has to be a willful violation of a court order and that they had the ability to comply with that court order."
and:
The court : "Or am I supposed to find whether or not there's a clear and unequivocal violation of a clear and unequivocal order of this Court? And whether or not somebody could comply with that clear and unequivocal order. That's the standard I'm going by. Is that not correct, Counsel?"
Father's counsel : "No."

We note that, for this reason, the expert's proffered testimony about the actual tax obligations of the parties was irrelevant.

On cross-examination at the contempt trial, the husband read the order out loud and further testified:
"Father shall transfer one-half of the difference to the parties retirement fund, $6,992 to Mother via roll over or QDRO."
Q.: "Okay."
A.: "Each party shall retain-oh, that's the rest of it."
Q.: "Have you done so yet?"
A.: "I have not."
Q.: "And why is that?"
A.: "Because we've been offering to offset the debt from the IRS. She owes me more money than I owe her."

The husband's brief as a whole is troubling, as it contains statements that are untrue, disrespectful to the contempt judge, irrelevant, and misleading. For example, as to untrue statements, in his brief, the husband contends that the judge in the contempt trial "ignored [the husband's] claim against [the wife] and held him in contempt, despite the [wife] owing him then over $120,000." In fact, it was clear at the time of the contempt trial that no damages had yet been assessed in the defamation case. The husband's counsel told the judge, "Your Honor, [w]e were waiting for an assessment of damages. Due to the other side continuing the matter, ... they got what they wanted, which is when we appeared here on June 6th, we don't have the decision" of the judge in the defamation case. Nor has counsel seen fit to inform us that that judgment has now been vacated. As to disrespectful statements, the husband argues in his brief that he "was denied due process and a fair hearing due to the antics of the judge" during the contempt trial (emphasis added). As to irrelevant statements, in setting out the "Procedure and Facts," the husband in his brief devotes many pages to allegations and ad hominem comments about the wife's actions and claims in the divorce trial and custody dispute, which are not before us. As to misleading statements, the husband in his brief states, "At this divorce trial, [the wife] failed to disclose the full extent and amount of her federal tax indebtedness." The citation provided to support this statement is to the husband's own testimony at trial.

From early in the trial, the husband's counsel was both confrontational and disrespectful to the judge. Counsel repeatedly interrupted the judge, refused to answer direct questions and, more than once, when the judge indicated disagreement with counsel's legal argument, responded to the judge by asking him to recuse himself.
The husband's counsel's first request for recusal was denied early in the proceeding when the judge noted that he had not heard from the husband a reason why he "hasn't done what a Court has ordered him to do, there's no excuse for that that I've heard from you yet." The judge instructed husband's counsel that he could put the husband "on the stand and I'll hear all the excuses you want to give him." Counsel responded with a request for the judge to recuse himself "[b]ecause [the judge] just said all the excuses. You're already saying this gentleman ...-who's before the Court ..."; the husband was then called to testify. The judge denied counsel's next request for recusal after explaining to counsel that he could make an offer of proof only for "stuff that you have knowledge of."

The husband's argument that the judged erred in denying his subsequently filed motion for mistrial, based on the same argument as for recusal, fails for these same reasons.