JUDY R. LARSON vs. RICHARD A. LARSON.

No. 88-P-1350.

Middlesex. December 14, 1989. - March 7, 1990.

Present: WARNER, C.J., ARMSTRONG, & KAPLAN, JJ.

*Contempt. Divorce and Separation*, Separation agreement, Child support,
    Attorney's fees. *Contract*, Separation agreement. *Practice, Civil*, Ap-
    peal, Attorney's fees. *Attorney at Law*, Compensation.

On appeal from an adjudication of civil contempt in which a husband con-
    tended that the judge erred in determining that a certain child of the
    parties' marriage was not "emancipated according to law" as provided
    in their separation agreement, this court declined to consider the ques-
    tion whether the child was emancipated as matter of law upon attaining
    the age of eighteen, where the case had been tried on the theory that
    the matter would be resolved under the test for dependency of children
    between the ages of eighteen and twenty-one set forth in G. L. c. 208, §
    28. [340-341]
In an action for civil contempt alleging that a husband had violated the
    parties' divorce judgment by arbitrarily reducing alimony and child
    support payments, the judge did not err in determining the issue of a
    child's principal dependence in the context of G. L. c. 208, § 28, by
    placing greater weight on the wife's indirect and noneconomic contribu-
    tions, and on her inferior economic status, than on the husband's sub-
    stantial monetary contributions. [341-343]

COMPLAINT for divorce filed in the Middlesex Division of
the Probate and Family Court Department on June 20, 1979.

A proceeding for contempt, commenced on August 24,
1987, was heard by *Edward M. Ginsburg, J.*

*Barry C. Klickstein* for Richard A. Larson.

*Stephen C. Maloney* for Judy R. Larson.

WARNER, C.J. By a judgment of divorce nisi entered on
March 31, 1983, the parties were ordered to comply with the
terms of a separation agreement which was incorporated in
the judgment, but which survived with independent legal sig-
nificance. The agreement provided that beginning on April 1,

1983, Richard would pay to Judy, as unallocated alimony for her support and that of the three children of the marriage, the sum of $2,500 a month. These payments were to be annually adjusted by a formula and, at least as of January 1, 1987, required Richard to pay $2,600 a month to Judy. The agreement called for the termination of the unallocated child support payments on "the earliest happening of any one of the following events: (a) [t]he death of the husband; (b) [t]he death of the wife; (c) [t]he remarriage of the wife; (d) [a]ll of the children are emancipated according to law." Once the child support payments were terminated, Richard was to pay to Judy as alimony a sum equal to thirty percent of his annual gross earned income. The agreement also required that Richard pay the educational expenses of the children, including their tuition, room and board, books, travel expenses, etc.

On August 24, 1987, Judy filed a complaint for contempt, claiming an arrearage of $4,782, alleging that Richard had violated the divorce judgment by arbitrarily reducing (on April 1, 1987,[1] and every month thereafter) the alimony and support payments.

Prior to the commencement of trial in the Probate Court, the judge met in conference with counsel for both parties. Richard's attorney stated his understanding of the law which governed the case and argued that the matter should be resolved under the two-pronged test for dependency of children between the ages of eighteen and twenty-one set forth in G. L. c. 208, § 28. The judge apparently agreed with Richard's theory of the case and spoke at length with counsel concerning the issue of principal dependency within the meaning of the statute.

After trial, the judge made a memorandum and order, in which he noted that the arrears and interest were not in dis-

---

[1]The parties' youngest child, Elizabeth, attained the age of eighteen on April 1, 1987. At that time she was a senior in high school. At the time of trial, she was in her sophomore year at college. It is apparent that Richard's reduction in support payments was pursuant to the emancipation clause of the agreement.

pute and that Richard admitted his ability to pay. The judge framed the "sole question" as "whether the daughter of the parties, Elizabeth, who [was] a full time student at college residing principally with her mother, the plaintiff, [was] dependent within the meaning of the agreement and the statute." The judge concluded that she was so dependent, found Richard in contempt, and ordered him to pay to Judy the sum of $33,524.29, consisting of $24,674 in arrears, $3,284.55 in interest, and $5,565.74 in attorney's fees and costs.[2] See G. L. c. 215, § 34A.

On appeal, Richard contends that the judge erred in determining that Elizabeth was not "emancipated according to law" as provided in the separation agreement. Specifically, he argues that under Massachusetts law a child becomes emancipated upon attaining the age of eighteen years. He also asserts that the judge misapplied G. L. c. 208, § 28, in adjudging him in contempt.

1. *The theory of the case.* In the usual case, in order to find a defendant in civil contempt there must be a clear and unequivocal command and an equally clear and undoubted disobedience. *Nickerson* v. *Dowd*, 342 Mass. 462, 464 (1961). *Hinds* v. *Hinds*, 4 Mass. App. Ct. 63, 67 (1976). In addition, the defendant must be found to have the ability to pay at the time the contempt judgment enters. *Furtado* v. *Furtado*, 380 Mass. 137, 144 (1980). Where a separation agreement sets the parties' support obligations, the language of the contract, if plain and unambiguous, must be construed in accordance with its ordinary and usual sense. *Kotler* v. *Spaulding*, 24 Mass. App. Ct. 515, 516-517 (1987). If, however, a contract term employed by the parties leaves their obligations in doubt, the court, in construing the agreement, will place itself in the position occupied by the parties and will "examine the subject matter of the agreement and the

---

[2]On October 25, 1988, a single justice of this court stayed execution of the contempt judgment pending appeal upon the conditions that Richard (1) pay $5,000 to Judy before October 30, 1988, (2) pay the remaining $28,524.29 into an escrow account and (3) pay to Judy $2,600 on the first of each month beginning November 1, 1988, until the appeal is resolved. Richard has met these conditions.

language employed, and will attempt to ascertain the objective sought to be accomplished by the parties." *Feakes* v. *Bozyczko*, 373 Mass. 633, 635 (1977).

This is not, however, the usual case. As we have noted, it is evident from the pretrial conference that Richard, by counsel, sought to have the issue resolved by reference to the standards set forth in G. L. c. 208, § 28, as amended through St. 1976, c. 279, § 1. Under § 28, "[t]he court may make appropriate orders of maintenance, support and education of any child who has attained age eighteen but who has not attained age twenty-one and who is domiciled in the home of a parent, and is principally dependent upon said parent for maintenance." The transcript of the pretrial proceedings makes clear that the judge viewed the issue before him as involving a consideration of the factors prescribed by § 28. Judy's counsel raised no objection, and a review of the trial transcript and of the judge's memorandum of decision shows that the case was tried on that theory.

It is settled, of course, that the theory of law on which by assent a case is tried cannot be disregarded when the case comes before an appellate court for review. See *Santa Maria* v. *Trotto*, 297 Mass. 442, 447 (1937); *Regina Grape Products Co.* v. *Supreme Wine Co.*, 357 Mass. 631, 632 (1970); *DeRose* v. *Putnam Management Co.*, 398 Mass. 205, 212 (1986); *Commonwealth* v. *Rancourt*, 399 Mass. 269, 276 (1987); *Langton* v. *Commissioner of Correction*, 404 Mass 165, 166-167 n. 2 (1989). We, therefore, do not consider the question whether Elizabeth was emancipated as matter of law upon attaining the age of eighteen. See in this regard, *Turner* v. *McCune*, 4 Mass. App. Ct. 864, 864-865 (1976). But cf. *Pemberton* v *Pemberton*, 9 Mass. App. Ct. 9, 14 (1980).

2. *Principal dependency under G. L. c. 208, § 28.* In *Kirwood* v. *Kirwood*, 27 Mass. App. Ct. 1156, 1156 (1989), we addressed the issue of principal dependency in the context of G. L. c. 208, § 28, noting, inter alia:

"The provision of G. L. c. 208, § 28, involved in this case is designed to cover the special situation of a child,

between the ages of eighteen and twenty-one, who continues to be primarily dependent for maintenance upon the parent with whom he or she is domiciled. In considering the statutory question, a judge should not limit inquiry solely to the direct financial contributions made by the parties. In addition to those contributions, the judge should take into account the parties' resources, indirect financial obligations incurred by the custodial parent (such as the cost of maintaining a room for the child in the home as that cost relates to expenses such as rent, mortgage payments, insurance, utilities, etc.), as well as relevant noneconomic factors, such as the parents' respective involvement with the child's care and well-being."

In this case, there was undisputed evidence that Richard pays, in accordance with the terms of the separation agreement, all the expenses associated with Elizabeth's college education including her tuition, room and board and travel expenses. In addition, he provides her with an allowance of $250 a month while she is at school and a per diem of $15 when she resides with Judy during her vacation periods. During the summer months, Elizabeth is employed, purchases her own clothing and deposits her excess earnings in a bank. Judy does not provide her with an allowance or assist her in paying her personal bills. It thus cannot seriously be questioned that Richard is the primary financial provider for Elizabeth.

*Kirwood* cautions, however, that in determining the question of principal dependency a judge must look beyond direct financial payments and consider the parties' resources, indirect contributions, and such noneconomic factors as the parents' respective involvement with the child's care and well-being. Here, Judy maintains the home in which Elizabeth resides during her vacation periods and provides her with lodging, food, utilities, telephone, etc. The judge could determine that Elizabeth derives substantial benefit from these contributions. Judy also testified that, in addition to providing a home for Elizabeth, she serves as the "anchor" for the fam-

ily.[3] Indeed, there was evidence that Elizabeth saw her father on only two occasions during the summer prior to trial — at her sister's graduation from college and on the day he drove her back to college. The judge could infer that Judy was the one primarily involved with Elizabeth's care and well-being. Lastly, the parties' financial statements and their testimony show that Richard is in a far better economic position than Judy.[4] The judge could conclude that Judy was not in a position to make direct financial contributions to her daughter. Moreover, the judge would have been warranted in considering any adverse impact a reduction in the unallocated support award might have on Elizabeth's life-style at home. See *Kirwood*, 27 Mass. App. Ct. at 1157. At the pretrial conference, the judge stressed the need for maintaining a "status quo environment" for the child until she finished college.

The question of the child's principal dependency was an issue of fact for the trial judge to resolve. Although the question is close, we cannot say that the judge erred in determining the issue in this case by placing greater weight on Judy's indirect and noneconomic contributions, and on her inferior economic status, than on Richard's substantial financial contributions.

3. *Counsel fees.* Judy has requested an award of counsel fees and costs in connection with this appeal. See *Kennedy* v. *Kennedy*, 400 Mass. 272 (1987); *Yorke Management* v. *Castro*, 406 Mass. 17, 19 (1989). See also *Olmstead* v. *Murphy*, 21 Mass. App. Ct. 664, 666 (1986). Within thirty days after the issuance of the rescript, see Mass.R.A.P. 23, 367 Mass.

---

[3]The parties' other children, ages twenty-four and twenty-two, continue to reside with Judy.

[4]Richard, a surgeon, testified that he reduced the level of his medical practice in October, 1987, and that his income diminished thereafter. On his financial statement, he listed his total gross weekly income (earned and unearned) at $910, and listed the net value of his assets at $724,693. Judy, a homemaker, continues to receive $2,600 a month as unallocated support payments pursuant to the order of a single justice of this court. Her financial statement indicates, however, that at the time of trial she received only $170 a week from Richard. Judy listed her weekly needs at $575.11 and valued her assets, which consist primarily of the former marital home, at $388,221.

921-922 (1975), Judy may file with this court a petition for counsel fees and expenses in accordance with the procedure prescribed in *Yorke Management* v. *Castro, supra* at 20.

*Judgment affirmed.*