## Nancy E. Hoort *vs.* Steven T. Hoort.

No. 12-P-1853.

Plymouth. March 12, 2014. - May 28, 2014.

Present: Vuono, Grainger, & Agnes, JJ.

*Contempt. Practice, Civil,* Contempt. *Divorce and Separation. Taxation,* Income tax.

In a divorce action, a Probate and Family Court judge erred in finding the husband in civil contempt of a temporary court order requiring him to pay the wife a sum equal to one-third of his year-end distribution of law firm partnership compensation after taxes for a two-year period during the pendency of the action, where, although the order was a clear and unequivocal command of the sort required to support a complaint for contempt, the record, which contained contrary orders regarding the husband's correct tax rate in two successive years without any supportable finding to distinguish them, coupled with the judge's erroneous reliance on the timing of the husband's quarterly tax payments, could not properly support a determination of clear and undoubted disobedience. [365-368]

Complaint for divorce filed in the Plymouth Division of the Probate and Family Court Department on October 1, 2007.

A complaint for contempt was heard by *Catherine P. Sabaitis*, J.

*Brian J. Kelly* for Steven T. Hoort.

*Elaine M. Epstein* for Nancy E. Hoort.

Grainger, J. Steven Hoort (husband), the former husband of Nancy Hoort (wife), appeals from a judgment of contempt entered by a judge of the Probate and Family Court. At issue on appeal is the interpretation of language contained in a temporary order that was in effect for a two-year period during the parties' divorce proceedings requiring the husband to pay the wife "a sum equal to one-third of his year end distribution after taxes."

*Background.* The parties were married for thirty-one years,

although they lived separately during the last two of those years. The husband is a partner in a large law firm; the wife does not work outside the home. In 2007, the wife filed a complaint for divorce on the ground of irretrievable breakdown of the marriage. On October 20, 2008, the court entered the temporary order here in dispute.

We review the husband's compensation structure as it is relevant to the parties' arguments on appeal. The husband's approximate annual compensation in 2008 was $970,000.[1] The husband's annual compensation includes the following types of draws or distributions: (1) a $10,000 monthly draw; (2) three "tax draws" in the amount of approximately $110,000 paid in April, June, and September; and (3) a year-end distribution that is received in January of the following year.[2] The husband's year-end distributions for 2008 and 2009 — the two years pertinent to the dispute — were $245,023 and $249,934, respectively.

*The first complaint for contempt.* In January, 2009, the husband received his 2008 year-end distribution. In July, 2009, the wife filed a complaint for contempt asserting that the husband had failed to pay one-third of his 2008 year-end distribution as directed by the court's temporary order. The contempt action was consolidated with the divorce trial. Following a consolidated trial, the court found the husband not guilty of contempt. Specifically, in her findings of fact and rationale dated September 7, 2010, the judge found that the husband had applied an appropriate combined (Federal and State) tax rate for 2008 of 40.3 percent and that "[a]fter calculation of his State and Federal tax liability, [the h]usband complied with said order by paying $61,000."[3]

*The second complaint for contempt.* In January, 2010, the

---

[1] The record suggests that the 2008 compensation level was generally typical of the surrounding years.

[2] The record indicates that the husband also receives "incentive draws," which may be paid at any time and are not guaranteed. These incentive draws are not at issue on appeal.

[3] After application of the 40.3 percent rate to the gross amount paid in the 2008 year-end distribution, $245,023, one-third of the resulting net, "after tax" amount of $146,278.74 was actually $49,000. The overpayment of $12,000 was acknowledged by the judge and credited against the husband's use of

husband received his year-end distribution for 2009 in the amount of $249,934. The husband utilized the same tax rate he had applied twelve months earlier to his 2008 year-end distribution and, again, paid the wife one-third of the resulting after-tax amount. On March 12, 2010, the wife filed a second complaint for contempt alleging that the husband improperly calculated her share of the 2009 year-end distribution. A hearing was held on April 26, 2010, before the same judge of the Probate and Family Court. Following the hearing, in a judgment dated January 17, 2012, the judge found the husband in contempt and ordered him to pay the wife an additional $34,331.37 — an amount equal to one-third of his entire year-end distribution (i.e., without application of the tax rate) — along with attorney's fees and interest at the statutory rate of 12 percent. The husband filed this timely appeal from the judgment of contempt.

*Discussion.* "[I]n order to find a defendant in civil contempt there must be a clear and unequivocal command and an equally clear and undoubted disobedience." *Larson* v. *Larson*, 28 Mass. App. Ct. 338, 340 (1990) (*Larson*), citing *Nickerson* v. *Dowd*, 342 Mass. 462, 464 (1961). We conclude that the court's October 20, 2008, temporary order requiring payment of "one-third" of the husband's year-end distribution "after taxes" was a "clear and unequivocal command" of the sort required to support a complaint for contempt. It provided the husband with "adequate notice of the required . . . activity." *Lynch* v. *Police Commr. of Boston*, 51 Mass. App. Ct. 772, 776 (2001).

When a term is not defined by case law, statute, or agreement, we look to its ordinary usage. *Sisson* v. *Lhowe*, 460 Mass. 705, 709 (2011). "After tax" is commonly understood to be the sum remaining after taxes have been calculated. It refers to an amount net of tax obligations.[4] We reject the suggestion that the obligation to pay a portion of the husband's compensation "after taxes" refers to timing and can vary depending on whether taxes attributable to that specific compensation have already been paid or remain outstanding.

The judgment that the husband was in contempt with respect

marital assets in the divorce judgment. The overpayment is not at issue in this appeal.

[4]The wife's counsel appropriately asserted this definition at oral argument.

to his 2009 year-end distribution, however, is apparently based in part on the finding that the husband failed to calculate the correct "after tax" amount of his distribution because he had previously paid estimated taxes on a quarterly basis during calendar year 2009 in anticipation of the tax obligation that would be incurred when he received the year-end distribution.[5] This was error, insofar as the "clear and unequivocal" command to pay an "after tax" amount was not violated on this basis.

The wife asserts that the judgment should be upheld, albeit on a different basis. She asserts that evidence in the record demonstrates that the husband overstated his tax rate, and did so in both years covered by the temporary order.[6] This could support a judgment of contempt, assuming that there were a finding of a "clear and undoubted disobedience" that reduced the amount due to the wife under the temporary order.[7] Even were we to credit, for purposes of our analysis, the wife's assertions that husband used an incorrect tax rate, we would be unable to uphold the contempt judgment on this record.

Notably absent from the findings is any reference to "clear and convincing evidence of disobedience" by the husband of the terms of the temporary order. *Birchall, petitioner*, 454 Mass. 837, 839 (2009).

With respect to 2008, the husband first mistakenly overpaid, not underpaid, the wife. See note 3, *supra*. And, as stated, for that year the judge found that the "[h]usband's combined liability for [F]ederal and [S]tate taxes is 40.3 [percent]." Accordingly, to the extent the temporary order was interpreted by

---

[5]The judgment states: "[The husband] pays quarterly taxes which anticipates [*sic*] his year-end distribution, so the [c]ourt finds that [the husband's] calculation of [the wife's] share is wrong."

[6]In this context we note that the judgment of contempt is not definitive, and makes alternative findings: "From the evidence at the contempt hearing, it appears to this [c]ourt that the [husband] has either twice deducted taxes from his year end distribution, or calculated the wrong tax rate."

[7]On appeal, the wife points to the husband's 2008 Federal tax return, and a 2009 financial statement included in the record appendix, to argue that the husband overstated his combined Federal and State rate to the wife's detriment. We do not agree that an inference can be drawn with respect to 2009, as the financial statement merely sets forth "withholding/estimated payments" rather than the actual tax liability.

the judge, its "clear and unequivocal" command was deemed satisfied by the use of that rate.

Second, it is undisputed that the husband used the same tax rate and the identical method to calculate the wife's share of his year-end distributions in 2009 as in 2008. It is of course possible that the husband's tax rate was reduced by deductions, carried-forward losses, or some other mechanism that applied only in 2009, notwithstanding his almost identical level of annual earned compensation. There is however no finding to that effect, and no evidence in the record to support such a finding. Instead, the judge pointed to estimated quarterly tax payments paid during the year, and concluded that these should be employed to deem the entire year-end distribution "after taxes," hence subject to a zero percent rate. As stated above, this was error. See note 5, *supra.*

The wife's assertion that the husband misstated his rate in both years is unavailing here, as the dismissal of her first complaint for contempt and the finding that 40.3 percent was the correct rate in 2008 remains a ruling in the case. Absent a valid finding that distinguishes the two years, we conclude that this record fails to establish clear disobedience in 2009.

We recognize that our cases do not require a clear showing of actual intent to disobey a court order to support a judgment of civil contempt. See *O'Connell* v. *Greenwood,* 59 Mass. App. Ct. 147, 150-151 & n.3 (2003) (recognizing that the question of the degree of intent that must be shown to support a judgment of civil contempt is unsettled). See also *United Factory Outlet, Inc.* v. *Jay's Stores, Inc.,* 361 Mass. 35, 36-39 (1972) (declining to address cases treating wilful disobedience as an essential element of a civil contempt claim against an individual).[8] However, we conclude that this record — containing contrary orders in two successive years, without any supportable finding to distinguish them, coupled with the erroneous reliance on the timing of quarterly payments — cannot properly support a deter-

---

[8]The term "disobedience" can include, but does not depend upon, a concept of wilfulness. See Merriam-Webster's Collegiate Dictionary 360 (11th ed. 2005) ("refusal or neglect to obey"). See also Webster's Third New International Dictionary 652 (1993) ("refusal to obey or negligence in obeying a command: violation or disregard of a rule or prohibition").

mination of "clear and undoubted disobedience." *Larson*, 28 Mass. App. Ct. at 340.

*Judgment of contempt dated January 17, 2012, reversed.*