NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

21-P-590

HEATHER B. MONTALVO

vs.

JOSE L. MONTALVO.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant (husband) appeals from an amended judgment of contempt entered November 16, 2021, including an award allocating the fees of the special master and granting the wife attorney's fees. We affirm the amended contempt judgment to the extent the judge found that the husband failed to comply with the divorce judgment's requirement that the marital home be sold "forthwith." However, we vacate so much of the amended contempt judgment as rests on the judge's determination that the husband violated any other provision of the divorce judgment or subsequent order, and remand the matter for reconsideration and reallocation of the special master's and attorney's fees.

Background.  We summarize the findings of the judge, supplemented by certain undisputed facts.[1]  The essential facts are undisputed.  After trial, a judgment of divorce nisi entered on July 24, 2019, nunc pro tunc to June 21, 2019 (divorce judgment).  As pertinent to this appeal, the divorce judgment provided that

> "[t]he marital home located at 25 Moses Wheelock Lane, Unit 20, Westboro, MA, which is subject to a deed restriction, shall be sold forthwith.  The parties shall list the home for sale with a real estate broker, subject to the deed restriction and the Department of Housing and Community Development Regulations.  If the parties are unable to agree upon a real estate broker on or before September 1, 2019, Attorney Thomas Donahue is appointed as Master to effectuate the sale of the marital home.  The fees associated with a Master, as appointed by the Court, shall be paid from the proceeds from the sale of the property prior to any distribution to the parties.  The Master shall have the authority to list the property for sale, subject to the deed restriction and the Department of Housing and Community Development Regulations, hire a real estate agent and agree upon a sale price.  Upon the marital home being sold, the Master's Fees being paid and all normal and customary costs associated with said sale being paid, the parties shall share equally in the then remaining proceeds from the sale."

---

[1] The husband correctly points out that the statement in the amended judgment that the defendant "continued to attempt to refinance the existing mortgage on said home, which indebted both parties" is inconsistent with the judge's findings and unsupported by the evidence.  As correctly found in the judge's findings, the defendant was seeking to obtain financing for another home, not the marital home.  The erroneous statement in the amended judgment should be corrected by the judge on remand.

At the time the divorce judgment entered, the husband was living in the marital home with the couple's two children, of whom he had primary physical custody.

The parties obtained the marital home through a lottery system for affordable homes. Title was in the husband's name alone, as was the mortgage. The property was encumbered by a deed rider requiring the husband to notify the Department of Housing and Community Development (DHCD) and the town of Westborough in writing of his intent to sell the property before it could be put on the market. However, even after giving such notice, the husband retained the right to halt the sale of the property at any time, and DHCD was required to comply with any such request from the husband. The property could be sold only to a qualified buyer at no more than the maximum price set by DHCD.

The husband did not take the initial step towards sale, which was to notify DHCD of his intent to sell the property, until September 11, 2019. Thereafter, the husband completed a resale property information form, and the DCHD notified the town of its right of first refusal, which the town elected to waive. The property was placed on the open market on December 10, 2019.

The record supported the judge's findings that the husband took several steps thereafter that effectively caused the property to be taken off the market. Specifically, on December

31, 2019, the husband informed DHCD that he would not be available for several weeks, which halted marketing efforts. On February 3, 2020, the husband informed DHCD that he was attempting to obtain financing on another home and would be seeking from the court additional time to comply with the divorce judgment.[2] On April 27, 2020 -- shortly after the wife filed a complaint for contempt -- the husband reinitiated the sale process, but halted it again on May 13, 2020, by informing DHCD that he would be unavailable. On June 5, 2020, the husband informed DHCD that he wished to reinstate the sale process, but that his compliance with the divorce judgment was contingent upon his finding alternative housing. The divorce judgment did not permit the husband to impose such a contingency.

On July 21, 2020, the judge held a hearing on the wife's contempt complaint. The judge credited the special master's report at the hearing that there was a buyer interested in the property, but that the sales process was on hold due to the husband's self-made condition that the sale of the property be contingent upon his finding alternative housing. The judge found the defendant in contempt for failing to comply with the

---

[2] On February 3, 2020, the husband filed a complaint for modification seeking more time to comply with the divorce judgment due to his difficulties in obtaining alternate housing. That complaint was dismissed, a ruling the husband did not appeal.

4

divorce judgment despite having the ability to comply and ordered the husband to "sign any offer from a qualified buyer with no contingencies." Further, the defendant was notified that "[t]he court may assess further fees and sanctions for failure to comply with this order."

Following the July 21, 2020, order, the husband entered into a purchase and sale agreement (P&S) with his live-in girlfriend, who had been deemed qualified by DHCD, at the maximum sale price set by DHCD. The wife then sought to halt the sale to the girlfriend as further relief on her contempt complaint. On August 31, 2020, the judge declared void the P&S on the ground that it was not in fact a bona fide offer. The judge also ordered the husband to accept an offer only from a "neutral third party buyer." The husband filed a timely petition for interlocutory relief from a single justice of this court. The petition was allowed on October 8, 2020, and the single justice concluded that the judge abused her discretion in voiding the P&S. The single justice found that, although the proposed purchaser was the husband's significant other, she had been approved by DHCD to buy the home for the maximum resale value and there was no evidence that the offer was made without good faith or fraudulently.

On October 26, 2020, after hearing, the judge entered a further order on the contempt complaint, requiring that "[a]ny

5

proceeds from the sale of [the property] shall be held in escrow" by the special master.

On November 5, 2020, the husband and his girlfriend entered into a subsequent P&S (second P&S) at the maximum sale price, with a deposit of $6,070, and a closing date of November 30, 2020. On December 28, 2020, the special master filed an interim report in which he stated the closing did not occur as scheduled. The special master also reported that the closing was on hold because of an issue the lender had with appraisal associated with the loan to the girlfriend. On December 29, 2020, the judge issued a further temporary order on the contempt complaint, in which she authorized the special master to obtain a copy of the second P&S and information concerning any pending loan applications.

On February 12, 2021, the special master filed a further supplement and interim report stating that, after some back-and-forth concerning loan application and mortgage information, he had approved the transfer of the property on February 11, 2021. The closing took place the following day, February 12, 2021. Also on that day, the wife filed a motion seeking an order requiring that the husband be responsible for the fees of the special master. The wife claimed that the husband had delayed the sale of the property, and that the husband and his girlfriend had frustrated the special master's ability to obtain

6

necessary information.  Simultaneously, the wife filed a motion seeking an award of attorney's fees in the amount of $20,915.

On February 15, 2021, after having received a copy of the closing disclosure, the special master learned that the husband had given the girlfriend a credit of $7,982.81 toward the purchase price.  The special master was told that the second P&S provided that the husband would "credit the buyer up to 6% of the purchase price as a closing cost credit at closing as allowed under the mortgage terms.  This shall come out of his proceeds only.  Any share of the proceeds being paid to other parties shall not be affected by this credit."  The special master was also told by the closing attorney that the girlfriend would not have qualified for the mortgage without this credit. The effect of this undisclosed arrangement was that the special master would receive only $35,742.13 (plus the $6,070 deposit) from the sale, rather than $49,796 as he should have.   The special master suggested to the judge that the husband's credit be paid directly to the wife, and that the proceeds from the sale be divided keeping "in mind the cost of the special master, the application for counsel fees filed by the [p]laintiff's attorney, and any sanctions that may be assessed."

On February 17, 2021, the wife filed a second complaint for contempt (second contempt complaint), claiming that the closing cost credit violated the judge's October 26, 2020, order because

it was not disclosed by the husband to the special master and because it diverted funds to the girlfriend and away from the escrow to be held by the special master.

On April 27, 2021, after further hearing, the judge found the husband to be in contempt of the divorce judgment by failing to sell the property "forthwith."  The judge divided the proceeds of the sale equally between the husband and wife ($24,898 after accounting for the closing cost credit), found that the husband's failure to comply with the sale of the property resulted in the need for extensive involvement of the special master, ordered the husband to pay one hundred percent of the special master fees ($7,280), and awarded $15,750 in attorney's fees for the wife.  The judgment was later amended to reduce the attorney's fees award after the wife's counsel acknowledged an error as to the amount of the fees.  This appeal followed.

Discussion.  The husband makes two major arguments on appeal.  First, the husband argues that the judge abused her discretion in finding him in contempt of the divorce judgment.  Second, he argues that the judge abused her discretion in ordering him to bear the full amount of the special master's fees and the wife's attorney's fees.  We address each of these arguments in turn.

1.  Finding of contempt.  "We review the judge's ultimate finding of contempt for abuse of discretion, but we review underlying conclusions of law de novo and underlying findings of fact for clear error."  Jones v. Jones, 101 Mass. App. Ct. 673, 688 (2022), quoting Commercial Wharf E. Condominium Ass'n v. Boston Boat Basin, LLC, 93 Mass. App. Ct. 523, 532 (2018).  "[A] judge's discretionary decision constitutes an abuse of discretion where we conclude the judge made 'a clear error of judgment in weighing' the factors relevant to the decision, such that the decision falls outside the range of reasonable alternatives" (citation omitted).  L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).  "A finding is 'clearly erroneous' when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  Rosen v. Rosen, 90 Mass. App. Ct. 677, 692 (2016), quoting Martin v. Martin, 70 Mass. App. Ct. 547, 549 (2007).  "[W]e give 'due regard' to the trial judge's ability to judge the witnesses' credibility."  O'Connell v. Greenwood, 59 Mass. App. Ct. 147, 150 (2003).

"To constitute civil contempt there must be 'clear and convincing evidence of disobedience of a clear and unequivocal command.'"  Jones, 101 Mass. App. Ct. at 687, quoting Birchall, petitioner, 454 Mass. 837, 853 (2009).  "Civil contempt 'can be used as an enforcement mechanism only if the underlying order is

9

sufficiently clear, so that the party to be bound is provided with adequate notice of the required or prohibited activity.'" Lynch v. Police Comm'r of Boston, 51 Mass. App. Ct. 772, 776 (2001), quoting Demoulas v. Demoulas Super Mkts., Inc., 424 Mass. 501, 565-566 (1997). "The requisite unequivocal clarity requires more than a general statement that might or might not include the accused's conduct." O'Connell, 59 Mass. App. Ct. at 150.

"[V]ague or ambiguous language in a judicial decree will not suffice. Ambiguities are regularly resolved in favor of the alleged contemnor, and cannot be removed by examining the evidence underlying the judgment in which the ambiguous language is found." (Citations omitted.) Sax v. Sax, 53 Mass. App. Ct. 765, 772 (2002). Findings of contempt "have been upheld where, although the operative language was facially unclear, the simple straightforward, and undisputed facts regarding the parties' post-agreement conduct, clearly showed not only what the language meant but also that the parties shared a common understanding of that meaning. Far different are cases where the order's language is filled with discretion . . . or cannot be understood without an extensive review of the evidence, findings, or other background materials on which it is based." (Citations omitted.) Id. at 772-773.

10

The divorce judgment ordered that "[t]he marital home . . ., which is subject to a deed restriction, shall be sold forthwith," followed by a series of provisions prescribing the appointment of a special master.  The husband argues that the divorce judgment's order was not a clear and unequivocal command "because it defers to the authority of DHCD and makes reference to deed restrictions and DHCD regulations creating ambiguity as to the judgment's directives."  We disagree.

The divorce judgment unambiguously required the husband to "list the home for sale with a real estate broker, subject to the deed restriction and the [DHCD] Regulations" so that the property could be sold "forthwith."  The divorce judgment also required the parties to agree on a real estate broker by September 1, 2019.  The failure to meet the September 1 deadline resulted in the appointment of the special master.  That is not to say, however, that the husband was insulated from responsibility under the divorce judgment once a special master was appointed.  The husband remained responsible for listing the marital home for sale, which he had the power to do under the deed rider and DHCD regulations.[3]

---

[3] The husband -- not the wife -- participated in the DHCD's local initiative program, and he was given the opportunity to purchase the marital home at an affordable price.  Accordingly, his was the only name on the deed to the property, and he was required to follow the process outlined in section 4 of the deed rider to sell the property.  That process required him to notify DHCD and

11

The obligation to list the property for sale and sell it "forthwith" would naturally include the obligation not to withdraw the home from the market once listed, as well as an obligation not to impose conditions of the husband's own making on the listing or sale. See Demoulas, 424 Mass. at 567 ("We have upheld findings of contempt where the court order, although subject to some legal interpretation, has nonetheless placed the party bound by the order on notice that certain actions could constitute the basis for contempt"). The record supported a conclusion that the husband violated the divorce judgment by withdrawing the house from the market on multiple occasions, and by imposing conditions on the sale of his own making. Accordingly, the judge did not abuse her discretion in finding that the husband was in contempt of his obligation under the divorce judgment to list the property with a real estate broker, subject to the deed restrictions, in a manner to accomplish the sale of the property "forthwith."

However, the judge also concluded that by giving a closing credit to the girlfriend, the husband had violated both (1) the

_____

the town of Westborough that he intended to sell the property; at that point DHCD calculated the maximum resale price and commenced the marketing process (once the town waived its option to purchase the property). However, "once the resale process outlined in Section 4 of the Deed Rider commences, . . . it is not DHCD's normal practice to compel the homeowner to continue with the sale of the property," when a homeowner decides they no longer wish to sell.

divorce judgment, which provided that "[u]pon the marital home being sold, the Master's Fees being paid and all normal and customary costs associated with said sale being paid, the parties shall share equally in the then remaining proceeds from said sale"; and (2) the temporary order dated October 26, 2020, which required that "any proceeds" of the sale be held in escrow by the special master. "[I]n order to find a defendant in civil contempt there must be a clear and unequivocal command and an equally clear and undoubted disobedience." Hoort v. Hoort, 85 Mass. App. Ct. 363, 365 (2014), quoting Larson v. Larson, 28 Mass. App. Ct. 338, 340 (1990). Neither the divorce judgment, nor the October 26 temporary order was a clear and unequivocal order that the husband could not extend a closing credit that would not affect the amount the wife was to receive from the sale. We note in this regard that "normal and customary costs associated with said sale" as used in the divorce judgment is silent as to the handling of credits, and that "any proceeds" was undefined in the temporary order and could easily be understood to mean net proceeds from the sale.

Accordingly, we affirm the finding of contempt only to the extent it is based on the husband's failure to list and maintain the property for sale in a manner to accomplish its sale "forthwith."

13

2.  Award of special master's fees and attorney's fees.
The husband argues that the judge abused her discretion by awarding the full amount of the wife's attorney's fees without any examination of the reasonableness of the fees.  Second, the husband argues that the judge abused her discretion by ordering the husband to pay one hundred percent of the special master's fees without considering the wife's own conduct in delaying the sale.  Third, the husband claims that the judge erred in awarding fees without finding that he had the ability to pay them.

As presented to the judge, there were three potential procedural mechanisms by which she could make an award of attorney and special master fees against the husband.  The first was on the wife's contempt complaint and the temporary orders entered on that complaint.  The second was on the wife's motion for an award of attorney's fees based on the husband's purported "various and sundry actions and behavior to obfuscate the sale of the home in order to frustrate the" divorce judgment.  The third was on the wife's motion for an order allocating the fees of the special master based on similar allegations, as well as the refusal to provide necessary information to the special master.  In the end, the judge awarded fees solely on the contempt complaint, and took no separate action on the wife's two motions.  That said, the judge based the award of fees not

14

only on the husband's violation of the divorce judgment, but also on her finding that the husband's closing credit violated both the divorce judgment and the October 26 temporary order.

In light of our conclusion that the judge erred in finding the husband in contempt for giving the closing credit, a remand is necessary to permit the judge to reconsider the allocation and amount of the special master and attorney's fees. There is no doubt that "the awarding of attorney's fees and costs is an appropriate element of a successful civil contempt proceeding." Martinez v. Lynn Hous. Auth., 94 Mass. App. Ct. 702, 708 (2019), quoting Ventresca v. Town Manager of Billerica, 68 Mass. App. Ct. 62, 65 (2007). But the award must be grounded in the legal fees incurred "as a consequence of the [husband's] violation of the court order." Ventresca, quoting Demoulas, 424 Mass. at 571. Where a party has not prevailed in a contempt proceeding, fees should ordinarily not be awarded. See id. at 65-66. In this case, the pertinent order is the command in the divorce judgment that the husband list the property so that the property could be sold forthwith. It necessarily follows that, on remand, the judge should consider the extent to which the wife's own actions may have delayed the sale. The wife is not entitled to recover fees resulting from any delay she may have caused.

In addition, it appears from the record that the judge may have accepted the wife's application for fees without close

15

examination of its reasonableness or relationship to the contumacious actions of the husband.  We note in this regard that the judge accepted the first fee application at face value even though it contained a significant error resulting in more than twice the amount of fees that should have been claimed, and that she does not appear to have engaged in any examination of the reasonableness of the second fee affidavit.  On remand, we are confident that the judge will give close examination to the amount of attorney's fees claimed and their relationship to the husband's contempt.

We do not mean to suggest that, on remand, the judge cannot make an award of attorney's fees against the husband, or that she cannot allocate more than fifty percent of the special master fees to him.  However, any award should take into account the considerations we have set out above.

Finally, the husband argues that the judge did not consider his ability to pay the award of fees.  This argument, however, appears to be targeted to the original contempt judgment, which resulted in a net judgment against the husband in excess of his half of the proceeds from the sale.  As we have already noted, the amount was significantly reduced in the amended contempt judgment, with the result that the husband would receive some amount from the sale.  The husband has made no argument concerning his ability to pay the amended amount.  In any event,

16

because the judge, as a result of this decision, will reconsider the amount and allocation of attorney's and special master's fees, the father's argument is best directed to the trial court on remand.

Conclusion. We affirm so much of the amended judgment of contempt as found the husband in contempt of the divorce judgment provision requiring the marital home to be sold forthwith. We vacate the remainder of the amended judgment of contempt, and remand the matter for reconsideration and reallocation of the special master's and attorney's fees. We allow the wife's request for appellate attorney's fees. In accordance with the procedure specified in Fabre v. Walton, 441 Mass. 9, 10-11 (2004), the wife may, within fourteen days of the issuance of this decision, submit an application for attorney's fees with the appropriate supporting materials. The husband shall have fourteen days thereafter to respond.

So ordered.

By the Court (Wolohojian, Shin & Ditkoff, JJ.[4]),

*Joseph F. Stanton*

Clerk

Entered: October 5, 2023.

---

[4] The panelists are listed in order of seniority.