NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-926

SHERRYANN QUINDLEY

vs.

PATRICK TORMEY BURKE.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The husband, Patrick Tormey Burke, appeals from the amended judgment of divorce nisi entered by a Probate and Family Court judge, as well as from the denials of (1) his complaint seeking to hold the wife, SherryAnn Quindley, in contempt of court and (2) his motion to amend the judgments.  We conclude that further factual findings are required to support treating the wife's Federal Employees Retirement System pension as a stream of income instead of as a divisible marital asset.  Further concluding that the trial judge acted within his discretion in resolving the issues arising from the wife's withdrawals from her Thrift Savings Plan (TSP) without finding her in contempt and in ordering the parties to file a joint 2020 tax return, we affirm in part and vacate in part and remand the case for further proceedings.

1.  Standard of review.  "[A] judge 'has considerable discretion in determining how to divide [marital] assets equitably.'"  Pfannenstiehl v. Pfannenstiehl, 475 Mass. 105, 110 (2016), quoting Baccanti v. Morton, 434 Mass. 787, 792 (2001).  "Although we review the propriety of the legal standards applied by the judge, the discretionary determinations of property division 'will not be reversed unless plainly wrong and excessive.'"  Dilanian v. Dilanian, 94 Mass. App. Ct. 505, 510 (2018), quoting Hassey v. Hassey, 85 Mass. App. Ct. 518, 524 (2014).  "[F]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."  Mason v. Coleman, 447 Mass. 177, 186 (2006), quoting Mass. R. Dom. Rel. P. 52 (a).

2.  Pension.  The husband and the wife were married in 2005, and the divorce judgment nisi entered in 2021.  The wife worked as a Federal agent for more than thirty years, from May 1990 to July 2020.  She retired during the divorce proceedings and began receiving her Federal pension.  The pension was $1,343.77 per week in April 2021.  In the divorce judgment, the judge awarded no alimony and treated the wife's pension payments as income for the wife, not as a marital asset.  The husband challenges that decision, arguing that the wife's pension was an

2

asset of the marital estate accrued during marriage, which, accordingly, should have been shared with the husband.[1]

"The majority of our cases have treated retirement benefits and pensions as marital assets subject to equitable distribution." Casey v. Casey, 79 Mass. App. Ct. 623, 629-630 (2011). But this treatment is not invariably compelled. See Andrews v. Andrews, 27 Mass. App. Ct. 759, 761 (1989). Rather, "[a]limony and equitable division are interrelated remedies; the combination must make sense." Id. Two cases illustrate this interrelationship.

First, in Andrews, 27 Mass. App. Ct. at 761, we upheld the trial judge's decision to treat the husband's pension as a stream of income because that treatment justified an award of alimony, which could be altered if the wife's health changed, and "the total award to the wife was not inadequate." See id. ("Unlike equitable division, which cannot be altered, alimony is subject to modification" [citations omitted]). At the time of the divorce, the wife was suffering from a major suicidal depression, and she was on a leave of absence from her work as an elementary school teacher. Id. at 760. Her future health and therefore future financial needs were uncertain. Id. The husband, meanwhile, was retired with no income other than his

---

[1] We note that the wife had worked as a Federal agent for over fifteen years before marrying the husband.

3

pension.  Id.  The judge treated the wife's pension as a stream of income for her, assigned her approximately sixty-five percent of the nonpension assets, and awarded her alimony of thirty percent of the husband's monthly pension receipts and health insurance provided by the husband, both until her pension reached pay status.  Id.  This award was equitable; if the pensions had instead been treated as marital assets, this same division would have equated to the wife's having received approximately 48.61% of the marital estate (representing a difference of just over $40,000), plus health coverage at the husband's expense for about 6.5 years.  Id. at 759-760.

On the other hand, in Casey, 79 Mass. App. Ct. at 626, 629, we held that treating the husband's military pension as a stream of income where the husband was otherwise employed, there was no alimony award to the wife, and the remaining marital assets were divided equally resulted in an award that was not equitable to the wife.  The trial judge reasoned that "[t]reating the military pension as a source of income entitles Wife to a greater child support amount."  Id. at 633.  This additional payment to the wife, however, did not come close to bridging the gap between what the wife likely would have received if the pension had been treated as part of the marital estate and the increase in child support payments.  See id. at 632, 635 n.18. Instead, it widened the gap between the parties' post-divorce

4

financial positions.  See id. at 626-627.  Apart from the pension, the husband commanded a significantly higher salary than the wife, earning almost twice as much as the wife's imputed income.  Id. at 626.  With the pension as a stream of income, the husband earned nearly three times as much as the wife.  Id.  Because there was no reason to justify such an unequal division, the result was inequitable.  Id. at 632.

The wife here suggests that treating the pension as a stream of income is justified because it is coupled with no alimony award, which otherwise, she asserts, would have been required.  If the judge's decision to leave the entire pension with the wife was in lieu of an award of alimony, we would be unlikely to find an abuse of the trial judge's discretion.  See Warnajtys v. Warnajtys, 97 Mass. App. Ct. 690, 693 (2020), quoting Ross v. Ross, 50 Mass. App. Ct. 77, 81 (2000) ("Mathematical precision is not required of equitable division of property").  Nonetheless, the trial judge did not provide this explanation, and we do not know whether this was the trial judge's reasoning.

We cannot reach this conclusion on our own.  The trial judge made well-supported findings that "[b]oth Parties are in a good position to acquire future income, through their respective skill sets," and "it is likely that each Party is waiting until this matter is finalized before exploring further

5

employment/business opportunities."  We do not know what income, if any, the trial judge imputed to the parties, or how that imputed income potentially impacts alimony.[2]  Accordingly, we must remand the issue to the trial judge for further consideration.  Although we remand only the treatment of the pension, because the asset division and the treatment of the pension may be interrelated, the judge is free on remand to adjust the division of other marital assets or even to award alimony if that best achieves an equitable result.[3]

    3.  TSP withdrawals.  Under the so-called automatic restraining order in divorce proceedings,

> "(1) Neither party shall sell, transfer, encumber, conceal, assign, remove or in any way dispose of any property, real or personal, belonging to or acquired by, either party, except:  (a) as required for reasonable expenses of living; (b) in the ordinary and usual course of business; (c) in the ordinary and usual course of investing; (d) for payment of reasonable attorney's fees and costs in connection with the action; (e) written agreement of both parties; or (f) by order of the court."

Rule 411 (a) (1) of the Supplemental Rules of the Probate Court (2022).  "[I]n order to find a defendant in civil contempt there must be a clear and unequivocal command and an equally clear and

---

[2] By treating the wife's pension as a stream of income, the wife's weekly income is $1,725.  The husband's weekly income is $1,926.05.

[3] We do not mean to suggest that, with proper supporting findings, the judge could not reach the same result, both as to the pension and the rest of the marital estate.  We merely mean to leave the judge with maximum flexibility to achieve an equitable result.

undoubted disobedience."  Hoort v. Hoort, 85 Mass. App. Ct. 363, 365 (2014), quoting Larson v. Larson, 28 Mass. App. Ct. 338, 340 (1990).  "We review a judge's ultimate finding of contempt for an abuse of discretion, and we subject questions of law to plenary review."  Department of Revenue Child Support Enforcement v. Grullon, 485 Mass. 129, 134 (2020).  Here, the trial judge acted within his discretion in finding that all but one of the wife's withdrawals from her TSP were permissible under the automatic restraining order and in fashioning a remedy addressing the impermissible final withdrawal.

The trial judge found that all but one of the withdrawals "were used for living expenses, repairs, and the like."  This finding is supported by the wife's testimony, which the trial judge was permitted to credit.[4]  See Hunter v. Rose, 463 Mass. 488, 497-498 (2012).  Based on this finding, the trial judge permissibly found that these withdrawals were proper.  See Connor v. Benedict, 481 Mass. 567, 579-580 (2019) (affirming trial judge's decision to split debt from purchases despite

_____

[4] The wife testified that she spent the February 9 $100,000 withdrawal on taxes associated with that withdrawal, car repairs, a rental car, a mattress, and attorney's fees for this divorce action; the November 4 $120,000 withdrawal on taxes associated with that withdrawal and paying off a home equity line of credit, which she had borrowed from to pay her living expenses; and the December 17 $12,000 withdrawal on taxes associated with that withdrawal and a service dog.

7

automatic restraining order where "wife's purchase of furniture was not unreasonable").

As for the remaining withdrawal of $250,000, the trial judge found that the TSP was valued at just under $1,250,000 before that withdrawal and used the prewithdrawal value in the asset division calculation. Using the prewithdrawal amount penalized the wife by counting that withdrawal against her and then treating the $200,000 promissory note that she obtained by spending the post-tax amount of the withdrawal as an asset subject to division. This was a sufficient remedy for any impropriety by the wife.

The husband argues in his reply brief, however, that the trial judge's finding that the value of the TSP before this final withdrawal was just under $1,250,000 was incorrect. This argument was not properly raised before us, see Allen v. Allen, 86 Mass. App. Ct. 295, 302 n.11 (2014), quoting Pasquale v. Casale, 72 Mass. App. Ct. 729, 738 (2008) ("Any issue raised for the first time in an appellant's reply brief comes too late, and we do not consider it"), but, regardless, the evidence before the trial judge was ambiguous as to the value of the TSP before and after the last withdrawal, and the trial judge's conclusion that it was valued at just under $1,250,000 before the $250,000 withdrawal was not clearly erroneous.

According to the wife's financial statement, the TSP was valued at "$1,247,211.29." Two footnotes follow this valuation: The first states, "Balances are as of April 3, 2021," and the second states, "The Wife has a Promissory Note from Stepstone Connect which promises to pay the sum of $200,000.00 with interest from April 16, 2021, on the unpaid principal at the rate of 12% per annum. The total amount of the Promissory Note plus interest is due payable in full on April 19, 2023." At trial, the wife testified inconsistently regarding the date of the $1,247,211.29 value. Faced with ambiguous testimony, the trial judge permissibly credited the evidence that the value of the TSP in the wife's financial statement was, as the financial statement reported, from before the $250,000 withdrawal. See Hunter, 463 Mass. at 497-498.

We acknowledge that, apparently shortly after he received the judge's findings, the husband requested and obtained a document from the manager of the TSP that appears to contradict this testimony and then submitted the document to the judge nearly three months later. Although the trial judge could have considered this evidence (and presumably still could choose to consider it on remand), he acted well within his discretion in not amending the judgments based on evidence provided so late without an adequate excuse. See Dilanian, 94 Mass. App. Ct. at 516.

9

4.  Tax returns.  Generally, a trial "judge should consider the tax consequences arising from a [divorce] judgment."  L.J.S. v. J.E.S., 464 Mass. 346, 350 (2013).  But "[i]f parties do not request the judge to consider particular tax consequences and do not introduce reasonably instructive evidence bearing on those tax issues, the probate judge is not bound to grapple with the tax issues."  Ross, 50 Mass. App. Ct. at 83, quoting Fechtor v. Fechtor, 26 Mass. App. Ct. 859, 866 (1989).  See E.J. Dockter, Financial Aspects of Divorce in Massachusetts § 3.4 (2d ed. 2023) ("it is imperative that the practitioner investigate tax consequences prior to settling a case or in advance of the commencement of trial").  "The [trial] judge has 'considerable discretion' to make [tax consequence] determinations."  L.J.S., supra at 352, quoting Pierce v. Pierce, 455 Mass. 286, 293 (2009).

It could hardly come as a surprise to the husband that the judge's order would include a provision about taxes.  Both parties testified that they historically filed their taxes jointly, and the husband testified that they had not yet filed their 2020 taxes.[5]  The trial judge reasonably concluded that the

_____

[5] There was a substantial amount of additional testimony and evidence on taxes.  The husband included tax information in several parts of his financial statement; the wife testified that the husband was historically responsible for paying real estate taxes with money from their joint checking account; the husband testified to how the Polish taxes were paid; the husband

10

parties should file a joint 2020 tax return, consistent with their historical practice.[6]  See C.P. Kindregan, Jr., M. McBrien, & P.A. Kindregan, Family Law and Practice § 16:5 (4th ed. 2013) ("In general, 'married filing jointly' provides the best tax situation for couples not yet divorced").

The husband moved to amend the judgments, arguing that requiring the parties to file a joint tax return would "result[] in higher combined income taxes" and submitting hypothetical tax returns aimed at demonstrating this.  The husband did not explain the assumptions he made in filling out Form 1116 (foreign tax credit) or Form 2555 (foreign earned income) or provide the Foreign Earned Income Tax Worksheet from page 35 of the 2020 General Instructions that, presumably, was used to calculate line 16 of Form 1040.  The husband did not provide an opinion from a disinterested certified public accountant[7] to support his assertions, and the trial judge was not required to

_____

testified that he had not received any income or tax reporting documents from his wife yet for the 2020 taxes; and the husband testified that they had received a refund in 2019, and that part of that refund was applied toward 2020 taxes.

[6] The husband's argument that Federal law prohibits requiring a joint return was not raised before the trial judge and therefore is waived.  See Carey v. New England Organ Bank, 446 Mass. 270, 285 (2006), quoting Century Fire & Marine Ins. Corp. v. Bank of New England-Bristol County, N.A., 405 Mass. 420, 421 n.2 (1989) ("An issue not raised or argued below may not be argued for the first time on appeal").

[7] The husband, although licensed as a certified public accountant, testified that he had not practiced since 1995.

credit the husband's personally-prepared, unexplained tax returns. Under these circumstances, the judge acted well within his discretion in not amending the judgments to remove the requirement of joint filing.[8]

5. Conclusion. The judgment on the husband's complaint for contempt is affirmed. Paragraph six of the amended judgment of divorce nisi is vacated, and the matter is remanded for further proceedings in accordance with this decision. The amended judgment is otherwise affirmed, as is the order denying the motion to amend.[9]

So ordered.

By the Court (Ditkoff,
   Englander & Walsh, JJ.[10]),

Assistant Clerk

Entered: February 20, 2024.

---

[8] We do recognize that the use of the Foreign Earned Income Tax Worksheet to calculate tax due is one of the rare situations in which, in theory, filing separately can be more advantageous than filing jointly. On remand, the judge is free (in his discretion) to reconsider this requirement on proper request, especially if a disinterested accountant's opinion is provided.
[9] The wife's request for attorney's fees is denied. The husband's appeal is not frivolous. See Vera V. v. Seymour S., 98 Mass. App. Ct. 315, 320 n.9 (2020).
[10] The panelists are listed in order of seniority.